KRYSTYNA H. BERRY *et al.*, Plaintiffs-Appellants, v. OAK PARK HOSPITAL *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—92—2251

Opinion filed December 30, 1993.

Clousson & Spadoni, of Chicago (Jerry P. Clousson, of counsel), for appellants.

Cassiday, Schade & Gloor, of Chicago (Peter J. Borzeka and Richard A. Paulis, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

After her surgical privileges at Oak Park Hospital (Oak Park) were summarily suspended, plaintiff, Dr. Krystyna H. Berry, brought an action against Oak Park, Dr. William Ashley, and Dr. John Tope. The trial judge granted defendants' motions to dismiss under section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1991, ch. 110, par. 2—619 (735 ILCS 5/2—619 (West 1992))) on the grounds that all defendants had absolute immunity from liability for civil damages under section 10.2 of the Hospital Licensing Act (Ill. Rev. Stat. 1991, ch. 111$^{1}$/$_2$, par. 151.2 (210 ILCS 85/10.2 (West 1992))). On appeal, plaintiff raises the following issues: (1) whether the trial judge erred in holding that, under section 10.2 of the Hospital Licensing Act, defendants were immune from liability for civil damages arising out of plaintiff's summary suspension; (2) whether section 10.2 of the Hospital Licensing Act should be applied retroactively; and (3) whether the trial judge erred in holding that, under section 10.2 of the Hospital Licensing Act, defendants were immune from liability for civil damages arising out of defendants' failure to comply in a timely manner with a court order and settlement agreement.

The events leading up to this appeal began on April 17, 1985, after plaintiff, a board-certified ophthalmologist, completed an extremely long and protracted cataract surgery. Immediately upon completing the operation, she was confronted by Arthur Malone, the executive director of the Oak Park Hospital, Dr. William Ashley, the chairman of the department of surgery, and Dr. John Tope, a member of the executive committee. Malone, Ashley and Tope informed plaintiff that her clinical privileges were being suspended, effective immediately. In a letter to plaintiff dated April 19, 1985, Malone confirmed the summary suspension of plaintiff's clinical privileges. In the letter, Malone stated that the suspension was "in the best interest of patient care" and was related to the surgical procedures plaintiff performed on April 17, 1985. He notified plaintiff that "the appropriate committee of the Medical Staff will hold a hearing" and plaintiff would be notified of the time, date and place of the meeting.

Article VII of the Oak Park medical staff bylaws provides that the chairman of the executive committee, the chairman of a clinical department, or the chief executive officer "shall each have the authority, whenever action must be taken immediately in the best

interest of patient care in the hospital, to summarily suspend all or any portion of the clinical privileges of a Staff member, and such summary suspension shall become effective immediately upon imposition." Since Malone was the executive director of Oak Park and Ashley was the chairman of a clinical department, either of them clearly was authorized by the medical staff bylaws to summarily suspend a staff member "in the best interest of patient care." Thus, plaintiff's initial suspension was authorized and in accordance with the medical staff bylaws.

According to the bylaws, plaintiff then had 30 days from the notice of her suspension to request that the executive committee hold a hearing or her right to such hearing would be considered waived. In a letter dated April 29, 1985, plaintiff provided Malone with her version of events during the surgical procedure on April 17 and asserted that she would "appreciate a timely decision on the part of the hospital and administrative staff as to restoring my full privileges." Plaintiff also informed Malone that she was willing to face the executive committee, but expressed her hope that the "provided information will spare me any further humiliation in front of the Executive Committee." Additionally, in a letter dated May 14, 1985, plaintiff explicitly requested a hearing be held pursuant to the medical staff bylaws. Consequently, plaintiff satisfied her duty to request a hearing within 30 days of her suspension.

On April 23, 1985, Ashley sent plaintiff a letter inviting her to attend the surgical control committee meeting scheduled for April 27, 1985, where her surgical procedures during the April 17 operation would be discussed. Plaintiff was unable to attend the meeting. Therefore, in a letter dated May 10, 1985, Malone requested plaintiff's attendance at the next surgical control committee meeting on May 18, 1985, for the purpose of defending her surgical procedures on April 17. Plaintiff was not given any other opportunity to appear before any other committee until after she instituted litigation. Apparently, the surgical control committee consists of four members, three of whom were present at the May 18 meeting. Moreover, two of the three members who were present were Ashley and Tope.

Once plaintiff requested a hearing, the executive committee of Oak Park was required to "hold a hearing on the matter within such reasonable time period thereafter as the Executive Committee may be convened in accordance with Article VIII of these bylaws." Article VIII provided that a hearing for a suspended staff member "shall be held as soon as arrangements therefore can reasonably be made *but not later than fourteen (14) days after receipt of [the] Staff member's request.*"

14

The surgical control committee meeting on May 18, 1985, clearly did not satisfy the requirement that the executive committee provide plaintiff with a hearing within 14 days. First, the surgical control committee is not the executive committee of the medical staff. Second, since we find that plaintiff's letter of April 29, 1985, satisfied her duty to request a hearing, the surgical control committee meeting on May 18, 1985, was not held within the required 14 days.

According to plaintiff's affidavit, she told Tope and Ashley at the surgical control committee meeting on May 18 that, if she was not going to get a chance to clear herself, she would resign. She stated that Ashley then took the letter of resignation she had prepared and placed it in his pocket while at the same time saying he was not accepting it. According to plaintiff, Ashley then accused her of being mentally disturbed. She asserted that she was led to believe that, if she contacted a psychiatrist and the psychiatrist concluded she was mentally stable, her clinical privileges would be restored. Consequently, the same day of the surgical control committee meeting, she contacted and saw Dr. William H. Egan, a psychiatrist at Oak Park. On May 20, 1985, Egan sent a letter to Ashley informing him that plaintiff exhibited no signs or symptoms of "depression, mania, schizophrenia, alcohol or drug abuse." He further advised Ashley that "[f]urther surgical administrative decisions should be based on surgical, rather than current psychiatric, grounds." Plaintiff asserted that Ashley still refused to allow her to perform surgery at Oak Park. Then, on June 26, 1985, plaintiff's resignation was accepted by the board of directors and plaintiff was notified by letter dated July 10, 1985.

Plaintiff then applied for privileges at several other hospitals, but was denied. She also continued to demand that Oak Park restore her privileges or, at the least, grant her a hearing. Finally, on September 19, 1986, plaintiff filed a four-count complaint for injunctive, declaratory, and other relief. Count I was for breach of contract for failing to provide plaintiff a hearing pursuant to the medical staff bylaws. Count II was also for breach of contract for refusing to reinstate plaintiff's privileges after she underwent a satisfactory psychiatric examination. Count III asserted promissory estoppel also for failing to reinstate plaintiff's privileges after she was examined by a psychiatrist. Count IV was titled interference with contractual and economic relationships and asserted, in effect, that defendants maliciously and intentionally deprived plaintiff of her clinical privileges for the purpose of harming her and also published slanderous statements about her to others in order to prevent her from obtaining privileges elsewhere. Defendants filed a motion to dismiss counts I through III.

The motion to dismiss was resolved by an agreed order entered on June 10, 1987. Defendants agreed to give plaintiff a hearing pursuant to the medical staff bylaws in exchange for which plaintiff would dismiss counts I through III of her complaint. For the next four months, plaintiff's attorney persistently and unsuccessfully requested that Oak Park grant plaintiff her hearing. On October 14, 1987, plaintiff filed a motion to compel defendants to comply with the previous agreed order. The court entered an order directing Oak Park to give plaintiff her hearing. Finally, on December 19, 1987, plaintiff was granted a hearing before an *ad hoc* committee. The committee recommended that plaintiff's privileges be reinstated with a six-month probationary period. According to plaintiff, however, defendants refused to implement the hearing committee's recommendations for another seven months.

On April 27, 1988, plaintiff voluntarily dismissed counts I through III of her complaint. Additionally, count IV was transferred to the law division because it sought money damages. Subsequently, plaintiff amended her complaint, which was now in the law division. She separated her remaining count into two counts: count I was now for interference with contractual relations and count II was for interference with prospective economic advantage. She also added another count for breach of contract which sought to recover for the damage caused by defendants' refusal to comply with the settlement agreement and court order for nine months and subsequent refusal to implement the *ad hoc* committee's recommendation for seven more months.

Defendants filed a motion to dismiss plaintiff's first-amended complaint at law on the ground that they were immune from liability for civil damages under section 10.2 of the Hospital Licensing Act. (Ill. Rev. Stat. 1991, ch. 111$^1$/$_2$, par. 151.2 (now 210 ILCS 85/10.2 (West 1992)).) The trial judge granted defendants' motion to dismiss. Plaintiff then filed a timely motion for reconsideration which was denied. Plaintiff appeals.

The first issue is whether the trial judge erred in holding that defendants' conduct in summarily suspending plaintiff's clinical privileges fell within the immunities of section 10.2 of the Hospital Licensing Act. In coming to his conclusion, the trial judge relied on the Illinois Supreme Court case of *Cardwell v. Rockford Memorial Hospital* (1990), 136 Ill. 2d 271, 555 N.E.2d 6. In *Cardwell*, the court addressed the relation between section 10.2 of the Hospital Licensing Act and the immunities provided in section 2b of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4406). In light of the facts of this case, a discussion of section 10.2, section 2b, and the *Cardwell* decision is necessary for the disposition of this case.

When it first became effective, section 10.2 of the Hospital Licensing Act provided:

"No hospital and no individual who is a member, agent, or employee of a hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of the acts, omissions, decisions, or any other conduct of a medical utilization committee, medical review committee, patient care audit committee, medical care evaluation committee, quality review committee, credential committee, peer review committee, or any other committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline. Nothing in this Section shall relieve any individual or hospital from liability arising from treatment of a patient." (Ill. Rev. Stat. 1985, ch. 111½, par. 151.2.)

In 1987, the legislature amended section 10.2 by adding the following introductory statement: "Because the candid and conscientious evaluation of clinical practices is essential to the provision of adequate hospital care, it is the policy of this State to encourage peer review by health care providers." Ill. Rev. Stat. 1991, ch. 111½, par. 151.2 (now 210 ILCS 85/10.2 (West 1992)).

Section 2b of the Medical Practice Act provides:

"While serving upon any Medical Utilization Committee, Medical Review Committee, Patient Care Audit Committee, Medical Care Evaluation Committee, Quality Review Committee, Credential Committee, Peer Review Committee, or any other committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital duly licensed under the Hospital Licensing Act, or the improving or benefiting of patient care and treatment whether within a hospital or not, or for the purpose of professional discipline, any person serving on such committee, and any person providing service to such committees shall not be liable for civil damages as a result of his acts, omissions, decisions, or any other conduct in connection with his duties on such committees, except those involving willful or wanton misconduct." Ill. Rev. Stat. 1985, ch. 111, par. 4406.

In *Cardwell*, plaintiff was a doctor at Rockford Memorial Hospital. Several hospital employees formed a committee to confront plaintiff about their suspicions that he was suffering from a drug, alcohol, emotional or mental problem which was adversely affecting his work. The committee informed plaintiff that in order to retain his

staff privileges he would have to successfully undergo psychiatric examinations.

Plaintiff subsequently resigned from the hospital staff and brought an action to recover civil damages for slander, coercion, intentional infliction of emotional distress, and intentional interference with contract. Defendants filed a joint motion to dismiss under section 2—619 of the Illinois Code of Civil Procedure on the grounds that they were immune from liability for civil damages under both section 10.2 of the Hospital Licensing Act and section 2b of the Medical Practice Act.

Since section 2b of the Medical Practice Act provided immunity to persons serving on or providing service to the identical types of committees covered by section 10.2 of the Hospital Licensing Act, plaintiff asserted that section 10.2 implicitly included the exception for willful and wanton misconduct which was provided in section 2b of the Medical Practice Act. Plaintiff argued that to interpret section 10.2 as providing absolute immunity "would effectively repeal causes of action for liability predicated upon willful and wanton misconduct as provided by the Medical Practice Act."

In rejecting plaintiff's contentions, the *Cardwell* court first followed the basic rule of statutory construction which mandates that courts strictly construe legislative enactments according to their plain language. Since section 10.2 of the Hospital Licensing Act did not expressly incorporate the exception for willful and wanton misconduct contained in section 2b of the Medical Practice Act, the court presumed that the exception was intended to apply only to the immunity created in section 2b and not to the entirely separate immunity created by section 10.2. The court went on to reason that, notwithstanding the rule of statutory construction, the two immunities did not conflict. Conceding that in some situations both immunities could be available to the same party, the *Cardwell* court determined that they presented two separate means by which a defendant could escape liability.

After reviewing the *Cardwell* decision and its discussion of the immunities provided by section 10.2 and section 2b, we believe the facts of this case perfectly illustrate how these sections may overlap, but do not conflict.

■ Section 10.2 of the Hospital Licensing Act provides *absolute immunity* to hospitals and agents or employees of those hospitals for the actions or decisions of certain *hospital committees*. (Ill. Rev. Stat. 1991, ch. 111½, par. 151.2 (210 ILCS 85/10.2 (West 1992)).) Section 2b of the Medical Practice Act, on the other hand, provides a *qualified immunity* to individuals who serve on or provide service to those

same hospital committees for actions or decisions of those *individuals* made "in connection with [their] duties on such committees." (Ill. Rev. Stat. 1985, ch. 111, par. 4406.) Thus, whereas section 10.2 of the Hospital Licensing Act provides absolute immunity for *committee actions,* section 2b of the Medical Practice Act provides qualified immunity for *individual actions.* Consequently, if a plaintiff is suspended or fired by a hospital committee, the members of that committee may be able to successfully invoke the immunities of both section 10.2 and section 2b as affirmative defenses. However, if a plaintiff is suspended or terminated by an individual acting in connection with his duties on a hospital committee, but not pursuant to a specific committee action or decision, only the immunities of section 2b are available to that individual.

■ In this case, plaintiff was summarily suspended by Malone, Oak Park's executive director and/or Ashley, the chairman of the surgical department and/or Tope, a member of the executive committee. This action was clearly that of these individuals and not that of a committee. Plaintiff did not appear before any committee nor did any committee even meet prior to the defendants' suspension of plaintiff. Thus, plaintiff's suspension was not the result of an act, omission, decision, or other conduct of a committee. Rather, plaintiff's suspension was the result of the unilateral actions of Malone, Ashley and Tope. Consequently, since section 10.2 of the Hospital Licensing Act clearly contemplates committee actions, its absolute immunities do not apply to protect defendants. Therefore, the trial judge erred basing his dismissal of plaintiff's complaint on the immunities of section 10.2. The qualified immunities of section 2b of the Medical Practice Act may provide a partial shield for Ashley and Tope, however, if their actions are found to have been made "in connection with [their] duties on such committees."

In light of our determination that defendants are not protected by section 10.2 of the Hospital Licensing Act, we need not consider plaintiff's argument that section 10.2 should not be applied retroactively.

Plaintiff's final contention is that the trial judge erred in holding that, under section 10.2 of the Hospital Licensing Act, defendants were immune from liability for civil damages arising out of defendants' failure to comply in a timely manner with a court order and settlement agreement.

Plaintiff and defendants entered into a settlement agreement whereby defendants agreed to provide plaintiff with a hearing pursuant to the medical staff bylaws and, in exchange, plaintiff agreed to dismiss counts I through III of her complaint. Defendants procrasti-

nated in complying with the agreement and court order. For four months, plaintiff's attorney persistently and unsuccessfully requested that defendants provide plaintiff with a hearing as they had agreed. He finally had to file a motion to compel defendants to comply. Finally, nine months after the parties entered into the agreement, defendants provided plaintiff with a hearing .before an *ad hoc* committee of the medical staff. Plaintiff then voluntarily dismissed counts I through III of her complaint.

■ In plaintiff's first-amended complaint at law, she included a count sounding in breach of contract which sought recovery for the damage caused by defendants' failure to give her a hearing for nine months. Plaintiff contends that the immunities of section 10.2 of the Hospital Licensing Act do not apply to protect defendants for this breach of contract.

First, as discussed above, section 10.2 does not apply. Notwithstanding the inapplicability of section 10.2, however, this count was properly dismissed because there was no breach of contract. In order to show a breach of contract, plaintiff must show (a) that a contract exists between plaintiff and defendant, (b) that plaintiff performed her obligations under the contract, (c) that defendant did not perform his obligations under the contract, and (d) damages as a result of the breach. (*Wilkonson v. Yovetich* (1993), 249 Ill. App. 3d 439, 449, 618 N.E.2d 1120, 1127.) Additionally, if a party to a settlement agreement breaches and the "breach goes to an essential element of the compromise agreement and in effect amounts to a refusal to perform or an abandonment, the other party may elect to regard the agreement as rescinded and proceed on the original cause of action, or may sue on the agreement for the breach." *Haisma v. Edgar* (1991), 218 Ill. App. 3d 78, 85, 578 N.E.2d 163, 167.

This case was properly dismissed because plaintiff cannot show that defendants did not comply with the agreement and order. There was no time limit included within the agreement. Assuming the parties contemplated a reasonable time, plaintiff could have sued on the agreement for the breach or regarded the agreement as rescinded and proceeded on the original cause of action. Although defendants were tardy in performing their obligation, plaintiff continued to urge them to comply. Defendants eventually did comply by providing plaintiff with a hearing. Plaintiff then performed her obligation by voluntarily dismissing counts I through III of her complaint. Thus, if plaintiff is entitled to recover for any damages caused by defendants' failure to provide her with a hearing for nine months, it is not under the theory of breach of contract.

Therefore, the trial judge erred in dismissing counts I through III

20

of plaintiff's complaint on the grounds that all defendants had absolute immunity under section 10.2 of the Hospital Licensing Act. Count III was properly dismissed, however, because no breach of contract occurred under the facts presented here.

Accordingly, for the foregoing reasons, the judgment of the circuit court of Cook County dismissing plaintiff's action is reversed in part and affirmed in part and the cause remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

MANNING, P.J., and CAMPBELL, J., concur.