THIRD DIVISION

November 12, 1998

No. 1-95-1351 and 1-96-1921, Consolidated

DR ABEL GARIBALDI,

Plaintiff-Appellant,

v.

DR ROBERT APPLEBAUM; DR TAMMO HOEKSEMA; DR DOMINIC ALLOCCO; CARDIOVASCULAR MEDICAL CONSULTANTS, P.C., an Illinois Professional Corporation; and SSM HEALTH CARE, d/b/a St. Francis Hospital and Health Center,

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 93 CH 0064 and 96 CH 00661

Honorable

Kathy Flannagan and Arthur L. Dunne,

Judges Presiding.

JUSTICE CAHILL delivered the opinion of the court:

We consider for the second time a dispute between a hospital and a doctor on its staff.  The hospital had signed a contract in 1992 with a group of doctors, granting the group an exclusive right to perform heart surgery at the hospital.  Plaintiff, a heart surgeon on the hospital staff, was not a member of the group.  Although the exclusive contract prevented plaintiff from using his clinical privileges, the hospital never gave him written notice that his clinical privileges were revoked.  

Plaintiff filed a three-count complaint against the hospital and the group of doctors.  In count I he sought to enjoin the hospital from revoking his clinical privileges to perform heart surgery without notice and a hearing under its bylaws, despite the exclusive contract.  Counts II and III were based on breach of and tortious interference with contract and sought damages.  A chancellor granted the hospital summary judgment on count I, entered a finding under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), and transferred the contract counts to the law division. 

On appeal from the ruling on count I, we reversed summary judgment for the hospital, finding that the doctor was entitled to a hearing under the hospital bylaws before the doctor's clinical privileges could be revoked.  See 
Garibaldi v. Applebaum
, 273 Ill. App. 3d 536, 653 N.E.2d 42 (1995) (
Garibaldi I
).  

Here the matter took a twist and turn.  While the appeal was pending, the legislature amended the Illinois Hospital Licensing Act.  See Pub. Act 88-654, eff. January 1, 1995 (amending 210 ILCS 85/10.4 (West 1994)).  The amendment directs hospitals that contemplate exclusive contracts to adopt a bylaw that specifically provides for a hearing and notice procedures to a practitioner whose privileges are affected by an exclusive contract.  210 ILCS 85/10.4 (West 1996).  The amendment reads in part:

"(b) All hospitals licensed under this Act, except county hospitals *** shall comply with, and the medical staff bylaws of these hospitals shall include rules consistent with, the provisions of this Section in granting, limiting, renewing, or denying medical staff membership and clinic staff privileges.

***

(2) Minimum procedures with respect to medical staff and clinical privilege determinations concerning current members of the medical staff shall include the following:

(A) A written notice of an adverse decision by the hospital governing board.

(B) An explanation of the reasons for an adverse decision including all reasons based on the quality of medical care or any other basis, including economic factors.

(C) A statement of the medical staff member's right to request a fair hearing on the adverse decision before a hearing panel whose membership is mutually agreed upon by the medical staff and the hospital governing board.  ***

***

(iii) If a hospital exercises its option to enter into an exclusive contract and that contract results in the total or partial termination or reduction of medical staff membership or clinical privileges of a current medical staff member, the hospital shall provide the affected medical staff member 60 days prior notice of the effect on his or her medical staff membership or privileges.  An affected medical staff member desiring a hearing under subparagraph (C) of this paragraph (2) must request the hearing within 14 days after the date he or she is so notified.  ***

(D) A statement of the member's right to inspect all pertinent information in the hospital possession with respect to the decision.

(E) A statement of the member's right to present witnesses and other evidence at the hearing on the decision.

(F) A written notice and written explanation of the decision resulting from the hearing.

(G) Notice given 15 days before implementation of an adverse medical staff membership or clinical privileges decision based substantially on economic factors."  210 ILCS 85/10.4 (West 1996).

Neither party argued the impact of the amendment on the case before the court.  Nor did the record reveal that a bylaw conforming to the amendment was adopted while this appeal was pending.  The case was decided in the trial court and in this court on the hospital bylaws as they were when the original complaint was filed.  Before the trial court addressed this court's opinion on remand, the hospital added a new bylaw (article IX), mandated by the amendment to the Hospital Licensing Act.

The hospital notified plaintiff by letter on October 12, 1995, that a new exclusive contract had been signed and that plaintiff was an "affected practitioner" under the new bylaw.  Plaintiff asked for and was given a hearing under the new bylaw.  The bylaw states in part:

"The hearing panel may hear evidence on anything pertaining to the exclusive contract, including, without limitation, the way(s) the exclusive contract is expected to improve the quality or uniformity of patient care or to attract additional patients to receive services at the Hospital, 
or the way the contract relates to specific clinical privileges(s) held by the Affected Practitioner(s) which will become subject to the exclusive contract.

***

If the decision to enter into the exclusive contract is based substantially on economic factors, then the exclusive contract shall take effect on the sixteenth (16th) day after the report of the hearing panel is provided to the Affected Practitioners.  Economic factors are reasons which are unrelated to quality of care or the professional competency of services provided at the Hospital."  (Emphasis added.)

The hospital governing board ratified the exclusive contract after the hearing, but rejected a hearing panel's recommendation to "grandfather" doctors who were in plaintiff's position.  After the hearing, plaintiff was allowed to amend his complaint to address issues raised by the article IX hearing.  The hospital again moved to dismiss, and on March 21, 1996, the trial court dismissed "the [i]njunction [c]ase as [m]oot": plaintiff had received a hearing under the new bylaw this court had ruled he was entitled to under the old bylaw.  Plaintiff appealed this order.

Meanwhile, counts II and III were under consideration in the law division.  In a written order entered before our decision in the first appeal, the trial court granted summary judgment to the hospital on counts II and III.  As in the chancery appeal, the amendment to the Hospital Licensing Act and the new bylaw were not argued or briefed in the law division.  The court found that the old bylaws of the hospital did not create a contractual relationship between the hospital and plaintiff.  The court concluded that a failure to give plaintiff a hearing under the bylaws could not support breach of contract or tortious interference claims.  Plaintiff appealed this order. 

 We consolidated the two appeals, reuniting the two components of a lawsuit, that, we believe, should never have been uncoupled in the first place, given the finding of the chancellor on count I of the original complaint. Counts II and III of plaintiff's original complaint were predicated on an alleged breach of plaintiff's contractual right to a hearing under the hospital bylaws. In paragraph 23 of his original complaint addressed to all counts, plaintiff alleged that the exclusive contract entered into by the hospital and the doctor defendants was "a breach of the bylaws."  In count II plaintiff alleged that the doctor defendants tortiously interfered with this "contract" between plaintiff and the hospital.  In count III plaintiff alleged breach of contract in that, "as a proximate result of the hospital's breach 
of the bylaws
" (emphasis added), plaintiff was damaged.

In a colloquy between the attorneys and the court on the motion for summary judgment on count I, the following occurred:

"THE COURT:  I cannot find within the pleadings a copy of the *** contract [plaintiff relies on].

MR. JOYCE:  The *** contract, we believe, as a matter of law, is the bylaw ***.

THE COURT:  What I am getting at, Mr. Joyce, is that there appears to be a specific contract dealing with Applebaum and his group.  There is no specific contract that I can find or am aware of dealing with Garibaldi and his group.

***

MR. JOYCE:  Well, Dr. Garibaldi doesn't have a separate contract.  He has relied on the bylaws ***."

When ruling on the motion for summary judgment, the trial court noted that plaintiff apparently "was operating under a contract, be it oral or otherwise."  The court did not elaborate on this statement.  But the court ruled that the bylaws had not been breached, relying on yet another bylaw that provided that an exclusive agreement with a practitioner would supersede contracts with other practitioners.  The trial court found that (a) the hospital had the right to enter into an exclusive contract with the doctor defendants, and (b) the bylaws did not prohibit such a contract.  Having made this ruling, it is not clear from our reading of the record why the two contract counts were not dismissed, but transferred to the law division.  Once the chancellor found no breach of the bylaws, the contract counts lost their predicate.

Defendants apparently agree.  In their motions for summary judgment before the law division judge on the contract counts, defendants suggested to the trial court, in 
res judicata
 arguments, that the chancellor's disposition of count I effectively disposed of counts II and III.  We agree.  The chancellor, having found that the hospital had not breached its bylaws in entering into an exclusive contract with the doctor defendants, undercut the causes of action set out in counts II and III.  Ultimately, of course, the law division judge reached a decision not incompatible with that of the chancellor but went on to decide an issue that need not have been addressed.  

For good or ill, the chancery division and law division cases, now severed, moved along at different appellate speeds.  The parties briefed the issues in separate appeals, but the issues remain entwined.  On June 14, 1996, we consolidated the appeals.  

We now address the following issues raised in the consolidated appeals:  (1) whether the chancellor erred in finding that plaintiff's suit for an injunction was moot without addressing the counts added to the amended complaint; and (2) whether plaintiff still has a viable contract cause of action for damages for the time between the first exclusive contract and the date of the article IX hearing under the new amended statute.

We first address plaintiff's argument that the trial court erred in dismissing his injunction case as moot.  He argues that the article IX hearing did not negate his right to a hearing under the old bylaws in effect when he first filed his lawsuit.

A case is moot when "it presents or involves no actual controversy, interests or rights of the parties or where the issues have ceased to exist."  
First National Bank v. Kusper
, 98 Ill. 2d 226, 233, 456 N.E.2d 7 (1983).  We agree that the article IX hearing moots plaintiff's request, in count I, for a hearing under the old bylaw.  Plaintiff's clinical privileges were extinguished under the new bylaw; a hearing under the old bylaw would be a pointless exercise.  The issue of damages for the period before plaintiff received his hearing is a separate question we address later in this opinion.

Plaintiff next argues that the hearing under the new bylaw and the hospital's rejection, in part, of the hearing panel's recommendation were not "fair."  "A court *** will be justified in reviewing a private hospital's action even where the bylaws are followed if actual unfairness on the part of the hospital, its committees or individual members of the committees is demonstrated in the record."  
Adkins v. Sarah Bush Lincoln Health Center
, 129 Ill. 2d 497, 514, 544 N.E.2d 733 (1989).  We note that a hearing may be fundamentally unfair where the decision-maker has a pecuniary interest in the outcome of the hearing.  
Cf.
 
Ward v. Village of Monroeville
, 409 U.S. 57, 60, 34 L. Ed. 2d 267, 270, 93 S. Ct. 80, 83 (1972) (holding that a hearing where the judge has a "direct, personal, substantial, pecuniary interest" in the outcome of the case violates the due process clause of the fourteenth amendment). 

The trial court, unfortunately, did not rule on plaintiff's challenges to the hearing under the new bylaw.  After the hospital  hearing under the new bylaw, plaintiff amended his complaint to add counts IV and V.  He challenged the fairness of the hearing and the hospital's refusal to follow the hearing panel's recommendation that he be "grandfathered."  At the hearing on the hospital's motion to dismiss, the trial court ruled that the hospital "acted properly under the [article] IX hearing," but added, "I don't mean to exclude [plaintiff] or prevent him by reason of this ruling exercising his rights to challenge the [article] IX hearing" and that "this order is without prejudice to that proceeding in the event Dr. Garibaldi deems it appropriate."  When plaintiff responded that he had raised the issue of whether the hearing was proper, the trial court responded, "I don't know that you've amended your complaint to talk about the period after [the article IX hearing], so there's nothing before me on it."  In fact, counts IV and V were before the court.  The Rule 304(a) language in the trial court's order supports this reading of the record.  Nevertheless, the trial court then dismissed "the [i]njunction [c]ase as [m]oot."  We cannot review the arguments here because the trial court did not enter judgment on counts IV and V, nor did it dismiss them.  We remand with directions to the trial court to address counts IV and V of the complaint.

We next address plaintiff's argument that the law division trial court erred by granting summary judgment for defendants on plaintiff's breach of contract and tortious interference with contractual rights counts.  The trial court ruled that plaintiff could not maintain either count because there was no contract between plaintiff and the hospital.  This ruling was correct based on the chancellor's finding that there was no breach of the bylaws.  But the trial court also ruled that even if the bylaws applied, plaintiff's "privileges were not revoked or reduced, because there was no corrective action initiated."  The trial court apparently believed that even if the bylaws created a contract, so long as plaintiff kept his staff privileges, the impact on his clinical privileges did not implicate a breach of the bylaws.  For the reasons set out in 
Garibaldi I
, we disagree.  

Plaintiff now argues that 
Garibaldi I
 is the "law of the case" and should apply to our review of the law division appeal.  In 
Garibaldi I
, we held that the hospital "clearly had a contractual relationship with Garibaldi in 1992."  
Garibaldi I
, 273 Ill. App. 3d at 540.  The "law of the case" rule holds that a question of law decided on a previous appeal is binding on the trial court on remand as well as on the appellate court in a subsequent appeal.  
Martin v. Federal Life Insurance Co.
, 268 Ill. App. 3d 698, 701, 644 N.E.2d 42 (1994).  We agree.  But we may review earlier decisions if our supreme court makes a contrary ruling on the issue or we find our first decision "palpably erroneous."  
Foster v. Kanuri
, 288 Ill. App. 3d 796, 799, 681 N.E.2d 111 (1997).

Defendants now argue that 
Garibaldi I
 was palpably erroneous because we ignored a disclaimer in the preamble of the hospital bylaws that reads: "these bylaws do not purport to be a contract between the Medical Staff or any of its individual members."  

In support, defendants argue that this case is comparable to 
Duldulao v. St. Mary of Nazareth Hospital Center
, 115 Ill. 2d 482, 491, 505 N.E.2d 314 (1987), and 
Semerau v. Village of Schiller Park
, 210 Ill. App. 3d 493, 496, 569 N.E.2d 183 (1991), which defendants assert  held that similar disclaimers in employee handbooks may negate the formation of a contract.  
Duldulao
 is not on point.  
Duldulao
 only noted that the handbook before the court did not have a disclaimer.  The case did not address the impact of a disclaimer.  We note that Illinois appellate courts have held that disclaimers will sometimes (see 
Semerau
, 210 Ill. App. 3d at 496), but not always (see 
Perman v. ArcVentures, Inc.
, 196 Ill. App. 3d 758, 764-65, 554 N.E.2d 982 (1990)), negate the contractual effect of an employee manual.

More to the point, the hospital bylaws implicated here are not analogous to the procedural promises in the employee handbooks in 
Duldulao
 and 
Semerau
.  Unlike an employer who voluntarily issues employee handbooks, hospitals must, under the Illinois Administrative Code (the Code), adopt bylaws that ensure procedural safeguards for their staff members' clinical privileges.  The Code required:

"a) The medical staff shall be organized in accordance with written bylaws, rules and regulations, approved by the Governing Board.  The bylaws, rules and regulations shall specifically provide ***:

1) establishing written procedures relating to *** clinical privileges disciplinary matters ***.  ***

***

C) The procedure shall grant to current medical staff members at least: written notice of an adverse decision by the Governing Board; an explanation and reasons for an adverse decision; the right to examine and/or present copies of relevant information, if any, related to an adverse decision; an opportunity to appeal an adverse decision; and written notice of the decision resulting from the appeal."  77 Ill. Adm. Code §250.310(a)(1)(C) (eff. May 1, 1991).

Illinois cases have consistently upheld the rule of limited judicial review of hospital staff decisions because hospitals--unlike employers who voluntarily issue handbooks--must adopt bylaws in conformity with the Administrative Code.  See 
Adkins
, 129 Ill. 2d at 506; 
Tabora v. Gottlieb Memorial Hospital
, 279 Ill. App. 3d 108, 116, 664 N.E.2d 267 (1996); 
Garibaldi I
, 273 Ill. App. 3d at 540; 
Beasley v. St. Mary's Hospital
, 200 Ill. App. 3d 1024, 1030, 558 N.E.2d 677 (1990); 
Carson v. Northwest Community Hospital
, 192 Ill. App. 3d 118, 121, 548 N.E.2d 579 (1989); 
Knapp v. Palos Community Hospital
, 176 Ill. App. 3d 1012, 1018, 531 N.E.2d 989 (1988); 
Lapidot v. Memorial Medical Center
, 144 Ill. App. 3d 141, 146, 494 N.E.2d (1986).  As we read these cases, the judicially created rule of deference to hospital governance decisions has developed because of the safeguards imposed on hospitals regulated by the state: the requirement that they adopt bylaws in conformity with the Administrative Code as a condition of licensing.

To honor the disclaimer in the hospital bylaws would undermine the policy of the Administrative Code and the power of the state to regulate hospitals.  We find further support for the position that the hospital disclaimer is against public policy in the 1995 amendment to the Hospital Licensing Act, which statutorily adopted provisions similar to the Administrative Code.  Section 2 of the Act was amended to read, in part:

"(b)The Illinois General Assembly finds:

***

(3) That it is in the interest of the people of the State of Illinois to establish safeguards that (i) require hospitals and hospital based providers to explain to individual providers the reasons, including economic factors, for credentialing decisions, [and] (ii) allow an opportunity for a fair hearing."  210 ILCS 85/2 (West 1996).

Accordingly, section 10.4 was amended to require hospitals to create bylaws providing for a "fair hearing" on adverse decisions affecting doctors' clinical privileges.  210 ILCS 85/10.4 (West 1996).  That, of course, is the ultimate issue we address in 
Garibaldi I
.

As a general rule, courts will not enforce a private agreement that is contrary to public policy.  
Rome v. Upton
, 271 Ill. App. 3d 517, 519, 648 N.E.2d 1085 (1995).  When a hospital complies with bylaws created under the Administrative Code, the ultimate decisions reached by the hospital are subject to limited judicial review.  See 
Garibaldi I
, 273 Ill. App. 3d at 540.  But the Code created a procedure that hospitals must adopt and adhere to before they are entitled to that deference.  77 Ill. Adm. Code §250.310(a)(1)(C) (eff. May 1, 1991).  If hospitals suffer no consequences for  refusing to provide a hearing under their bylaws, a hospital would have no incentive to adhere to them until ordered by a court to do so.  A bylaw disclaimer that immunizes a hospital for a failure to comply with the bylaws it is required to adopt under the Code reduces the Code to nothing more than an advisory document.

Addressing the contracts counts, defendants next argue that whatever the remedy for failure to comply with their bylaws, they are immune from suits for civil damages.  They cite four sources for such immunity: (1) the common law doctrine of limited judicial review; (2) the Illinois Hospital Licensing Act (210 ILCS 85/10.2  (West 1996)); (3) the Medical Practice Act of 1987 (225 ILCS 60/5 (West 1996)); and (4) an immunity provision in the hospital bylaws.  In support of the argument that the doctrine of limited judicial review precludes a claim for monetary damages, defendants rely on 
Knapp v. Palos Community Hospital
, 176 Ill. App. 3d 1012, 531 N.E.2d 989 (1988).  In 
Knapp
, we held:

"[A] physician claiming that a private hospital violated bylaws governing the procedure it was required to follow in rendering a decision regarding his staff privileges is merely entitled to relief requiring the hospital to comply with those bylaws before it renders its decision.  In other words, the rule does not allow a trial court to entertain the types of claims prosecuted by the plaintiffs against a private hospital for violating its bylaws *** or legal relief against the hospital for violating its bylaws in terminating the physicians from its medical staff."  
Knapp
, 176 Ill. App. 3d at 1021, citing 
Jain v. Northwest Community Hospital
, 67 Ill. App. 3d 420, 385 N.E.2d 108 (1978), and 
Shulman v. Washington Hospital Center
, 222 F. Supp. 59 (D.D.C. 1963).

See also 
Pulido v. St. Joseph Memorial Hospital
, 191 Ill. App. 3d 694, 700, 547 N.E.2d 1383 (1989) (a doctor is not entitled to damages or reinstatement of staff privileges where staff privileges are revoked in violation of hospital bylaws).  

There is an important difference in the case before us.  Unlike the hospital here, the hospitals in 
Knapp
 and 
Pulido
 followed procedures set out in their bylaws.  Defendants cite no case where a plaintiff was precluded from suing for damages after a finding that the hospital did not provide notice and a hearing in violation of its bylaws.  The cases on which 
Knapp
 relied do not support the conclusion that a plaintiff is limited to the remedy of injunctive relief when hospital bylaws are not followed.  
Jain
 and 
Shulman
 held that judicial review is limited to whether or not a private hospital has complied with its bylaws.  It does not follow that the only remedy, when those bylaws are not followed, is injunctive relief.  The doctrine of limited judicial review says nothing about what remedy is appropriate in those cases where review is appropriate.

Our supreme court has not directly addressed the question of whether the doctrine of limited judicial review precludes a suit for civil damages when a hospital fails to follow its bylaws.  But our supreme court has rejected the holding in 
Knapp
 that a plaintiff may only seek injunctive relief requiring compliance when a hospital has failed to comply with bylaws in reviewing staff privileges.  See 
Adkins
, 129 Ill. 2d 497.  In 
Adkins
, our supreme court affirmed an appellate court order reinstating a doctor when the doctor had been denied a hearing that he was entitled to under the hospital's bylaws.  See 
Adkins
, 129 Ill. 2d at 506.  Most important, the court noted that under section 2b of the Medical Practice Act (Ill. Rev. Stat. 1985, ch. 111, par. 4406), a plaintiff could maintain a civil action for damages if he proved wilful and wanton conduct on the part of the reviewing committee.  See 
Adkins
, 129 Ill. 2d at 517.  We find implicit in 
Adkins
 a rejection of the holding in 
Knapp
 that a suit for civil damages may never be brought against a hospital for failure to comply with bylaws, or ignoring them altogether.

Defendants next argue that the Hospital Licensing Act (210 ILCS 85/10.2 (West 1996)), the Medical Practice Act (225 ILCS 60/5 (West 1996)), and a provision of the hospital bylaws provide immunity to participants in a hospital peer review process.  The Illinois Hospital Licensing Act provides:

"[No] hospital, hospital medical staff, hospital administrative staff, or hospital governing board shall be liable for civil damages as a result of the acts, omissions, decisions, or any other conduct of a medical utilization committee, medical review committee, patient care audit committee, medical care evaluation committee, quality review committee, credential committee, peer review committee, or any other committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care within a hospital, or the improving or benefiting of patient care and treatment, whether within a hospital or not, or for the purpose of professional discipline."  210 ILCS 85/10.2 (West 1996).

The Medical Practice Act reads:

"[W]hile serving upon any committee whose purpose, directly or indirectly, is internal quality control or medical study to reduce morbidity or mortality, or for improving patient care or physician services within a hospital duly licensed under the Hospital Licensing Act, or within a professional association of persons licensed under this Act, or the improving or benefiting of patient care and treatment whether within a hospital or not, or for the purpose of professional discipline, any person serving on such committee, and any person providing service to such committees, shall not be liable for civil damages as a result of their acts, omissions, decisions, or any other conduct 
in connection with their duties on such committees
, except those involving wilful or wanton misconduct."  225 ILCS 60/5 (West 1996).

Article XV of the hospital bylaws states that each practitioner "agrees that he/she grants immunity from civil suit in their personal capacity to each professional and to each director, officer, employee and agent of the Hospital who participates in any peer review activity."  

In 
Berry v. Oak Park Hospital
, 256 Ill. App. 3d 11, 18, 628 N.E.2d 1159 (1993), the plaintiff was suspended by the executive director of a hospital and/or the chairman of the surgical department.  We noted that the plaintiff was suspended by one or both officials in their individual capacities.  No committee ever met regarding the plaintiff's suspension.  We held that the immunity granted under the Hospital Licensing Act was inapplicable because the plaintiff's suspension was not "the result of an act, omission, decision, or other conduct of a committee."  
Berry
, 256 Ill. App. 3d at 18.  We also found that the qualified immunity granted under the Medical Practice Act only protects "individuals who serve on or provide service to those same hospital committees for actions or decisions of those individuals made 'in connection with [their] duties on such committees.'"  (Emphasis omitted.)  
Berry
, 256 Ill. App. 3d at 17-18, quoting Ill. Rev. Stat. 1985, ch. 111, par. 4406.

Section 10.2 of the Hospital Licensing Act, section 5 of the Medical Practice Act, and article XV of the hospital bylaws promote the peer review process at hospitals by immunizing those who participate in the process.  Neither statute grants immunity where, as here, the peer review process was ignored.

Defendants argue that even if the bylaws are contractual, the bylaws were not breached because plaintiff's clinical privileges were never "revoked."  Defendants rely on 
Bryant v. Glen Oaks Medical Center
, 272 Ill. App. 3d 640, 650 N.E.2d 622 (1995).  
Bryant
 is distinguishable in two important respects: (1) Bryant was given notice of his termination, but never asked for a hearing under the bylaws; and (2) the parties did not address, nor did we consider, the impact of the January 1, 1995, amendment to the Hospital Licensing Act.  In 
Bryant
, we held that plaintiff's staff privileges had not been revoked or reduced when the hospital terminated plaintiff's at-will position as director of laboratory services and informed plaintiff he could only use the resources of the laboratory at the invitation of another physician.  We noted that "[t]he granting of medical staff privileges merely demonstrates the hospital's determination that a physician's credentials are such that he or she is qualified to practice medicine at the hospital, but does not guarantee concurrent employment."  
Bryant
, 272 Ill. App. 3d at 651.  In 
Bryant
, we distinguished 
Lewisburg Community Hospital v. Alfredson
, 805 S.W.2d 756, 761-62 (Tenn. 1991), where the plaintiff was completely barred from using hospital radiological facilities.  The plaintiff in 
Bryant
, while no longer given "free and unconditional access" to the pathology equipment, could access equipment at the invitation of another physician.  Here, plaintiff's situation is similar to the plaintiff's situation in 
Lewisburg
.  Plaintiff was completely barred from performing heart surgery as a result of the exclusive agreement with defendants.

Based on what we have set out above, we do not believe our holding in 
Garibaldi I
 that plaintiff's privileges were revoked in breach of the hospital's bylaws was palpably erroneous.  We note again that while this appeal was pending the legislature granted by statute the right we held plaintiff was entitled to in 
Garibaldi I
.  We reverse the law division's grant of summary judgment for defendants on counts II and III of plaintiff's complaint sounding in contract.

We reverse summary judgment on counts II and III, and remand case No. 1-95-1351 to the law division.  We affirm the trial court's dismissal of count I in case No. 1-96-1921, but remand for further proceedings on plaintiff's challenges to the article IX hearing in  counts IV and V of plaintiff's amended complaint.  

Affirmed in part and reversed in part; cause remanded.

COUSINS and LEAVITT, JJ., concur.