Docket Nos. 86952, 87120 cons.–Agenda 11–January 2000.

ABEL GARIBALDI, Appellee, v. ROBERT APPLEBAUM 
et al., 
 Appellants.

Opinion filed October 26, 2000.

JUSTICE MILLER delivered the opinion of the court:

This appeal considers what procedural rights, if any, a physician has under hospital bylaws when a hospital enters into an exclusive contract with a competing group of physicians for the performance of the same work as the physician performs. In two separate appeals from judgments entered in the circuit court of Cook County, the appellate court concluded that the plaintiff in this case was entitled to notice and a hearing before the hospital entered into an exclusive contract with a competing medical group (
Garibaldi v. Applebaum
, 273 Ill. App. 3d 536 (1995)), and that the plaintiff may recover damages for the period preceding the hearing that he eventually received on the matter (301 Ill. App. 3d 849). We allowed the defendants’ separate petitions for leave to appeal from the appellate court’s second decision (177 Ill. 2d R. 315(a)), consolidated the appeals for purposes of oral argument and disposition, and now reverse the judgment of the appellate court.

The plaintiff, Dr. Abel Garibaldi, is a board-certified cardiovascular surgeon who has had clinical privileges at St. Francis Hospital and Health Center, in Blue Island, since 1981. From 1981 to 1992, the plaintiff was a member of Cardiovascular Renal Consultants (Cardiovascular Renal), a group of physicians who performed, among other services, open-heart procedures at several hospitals in the Chicago area, including St. Francis. Dr. Robert Applebaum, Dr. Tammo Hoeksema, and Dr. Dominic Allocco were also members of Cardiovascular Renal. After internal differences arose over matters involving patient selection, operative procedures, and post-operative care, Cardiovascular Renal dissolved. A new group, defendant Cardiovascular Medical Consultants (Cardiovascular Medical), was later formed by Drs. Applebaum, Hoeksema, Allocco, and others, but it did not include the plaintiff.

Dr. Applebaum later entered into an exclusive contract with St. Francis that allowed only Dr. Applebaum, employees of Cardiovascular Medical, and those who subcontracted with Dr. Applebaum to perform open heart surgery at St. Francis. According to the plaintiff’s subsequent complaint, the effect of this exclusive contract was to revoke his right to perform open-heart procedures at St. Francis without affording him the benefit of notice and a hearing, in violation of the hospital’s then-current bylaws.

Article VII, section 3(c), of the hospital bylaws, “Corrective Action,” states in part:

“Actions which limit, reduce, suspend or revoke membership or clinical privileges of a practitioner on the staff of the Hospital or revoke staff membership shall be deemed to be adverse to the practitioner and shall entitle the practitioner to notice and the hearing and appeal procedures as provided in Article VIII. These actions include:

***

(2) Reduction, suspension or revocation of clinical privileges and/or admitting privileges;

***

(4) Suspension or revocation of specific clinical privileges or Staff membership;

(5) Other similar actions.

Such actions constitute a recommendation by the Executive Committee to the Governing Body.”

Additionally, article VIII of the hospital bylaws, “Hearing and Appellate Review Procedure,” states in part:

“a. Any practitioner against whom an adverse recommendation has been made and which involves corrective action set out in Article VII, Section 3(c) shall have the right to request a hearing on the adverse recommendation under the terms and procedures described in this Article.”

The initial exclusive contract between St. Francis and Dr. Applebaum took effect on January 1, 1993. The plaintiff commenced the present action on January 26, 1993, by filing a three-count complaint in the circuit court of Cook County. Count I of the complaint was directed against St. Francis, Cardiovascular Medical, and Drs. Applebaum, Hoeksema, and Allocco and sought declaratory and injunctive relief. Count I alleged that St. Francis, by entering into an exclusive contract with Dr. Applebaum, effectively revoked the plaintiff’s clinical privileges without notice and a hearing, as required by articles VII and VIII of the hospital bylaws. Count II of the plaintiff’s complaint alleged tortious interference with contractual rights and sought damages from Cardiovascular Medical and the defendant doctors. Count III of the complaint alleged breach of contract and sought damages from St. Francis.

A judge in the chancery division granted the defendants’ motion for summary judgment on count I and transferred counts II and III to the law division; the judge found no just reason for delaying enforcement or appeal of the judgment entered on count I (155 Ill. 2d R. 304(a)). The plaintiff appealed from the ruling on count I, and the appellate court reversed the entry of summary judgment and remanded the cause for further proceedings. 
Garibaldi v. Applebaum
, 273 Ill. App. 3d 536 (1995). The appellate court found that the hospital’s decision to enter into the exclusive contract with Cardiovascular Medical effectively reduced or revoked the plaintiff’s privileges at St. Francis, and the court believed that the plaintiff was therefore entitled to the notice and hearing procedures contained in articles VII and VIII of the hospital bylaws. 
Garibaldi
, 273 Ill. App. 3d at 540. This court denied the defendants’ petitions for leave to appeal. 
Garibaldi v. Applebaum
, 164 Ill. 2d 562 (1995).

With regard to counts II and III, a circuit judge in the law division granted the defendants’ motions for summary judgment on those counts. The judge found that the hospital bylaws did not create a contractual relationship between the hospital and the plaintiff. The judge also concluded that, even if the bylaws were applicable, they were not breached when the hospital entered into an exclusive contract with Cardiovascular Medical without first providing the plaintiff with notice and a hearing. The plaintiff appealed from that ruling; the appeal remained lodged in the appellate court until it was later joined by the plaintiff’s further appeal after the remand of count I.

During the pendency of the plaintiff’s appeal from the entry of summary judgment on count I, the legislature amended the  Hospital Licensing Act in a manner relevant to this case. See Pub. Act 88–654, eff. January 1, 1995 (amending 210 ILCS 85/10.4 (West 1992)). The amendment directed hospitals that contemplate exclusive contracts with professional groups to adopt bylaws that specifically provide for notice and hearing procedures for practitioners whose privileges will be affected by the contracts. 210 ILCS 85/10.4 (West 1996). To comply with the new statutory provision, St. Francis amended its bylaws; the hospital’s governing body approved article IX of the bylaws, “Hearing Opportunity Before Implementation of Exclusive Hospital Contracts,” on July 24, 1995. Article IX states in part:

“
Section 1. 
Notice to Other Practitioners

When the hospital enters into an exclusive contract with one or more practitioners, it shall give written notice of the effect of the exclusive contract to all other practitioners who hold specific clinical privileges which will, thereafter, be provided pursuant to the exclusive contract. Such notice shall be given not less than sixty (60) days before the exclusive contract takes effect.

Section 2. 
Who Is an Affected Practitioner

An Affected Practitioner is any Practitioner who, at the date of the notice:

(a) Holds a clinical privilege which shall become subject to the exclusive contract;

(b) Has exercised that clinical privilege at the Hospital within one (1) year prior to the notice;

(c) Has not been offered the opportunity to exercise that clinical privilege at the Hospital either as a party to the exclusive contract or under an arrangement with the providers who are themselves parties to the exclusive contract ***.”

Before the issuance of the appellate court’s mandate in the first appeal, St. Francis notified the plaintiff, on October 12, 1995, that it had entered into a second exclusive contract with Dr. Applebaum, effective December 13, 1995, and that the plaintiff was an affected practitioner under the new provisions of article IX of the bylaws. The plaintiff timely requested a hearing pursuant to article IX.

Following the hearing, a panel of three physicians concluded that it was “in the best interest of patient care and hospital administration” for St. Francis to enter into the exclusive contract with Cardiovascular Medical. The report also recommended that, whenever an exclusive contract is entered into, the hospital should exempt from the consequences of the contract practitioners who have had clinical privileges for at least one year before the effective date of the contract. After considering the panel’s recommendations, the hospital’s governing board decided to adopt the exclusive contract without modification and rejected the “grandfather” provision recommended by the hearing panel.

After the article IX hearing, and while the cause was on remand from the appellate court’s first decision, involving count I, the trial court allowed the plaintiff to amend his complaint by adding counts IV and V, which sought injunctive relief prohibiting enforcement of the 1995 exclusive contract and a judgment declaring that St. Francis had no right to reject the hearing panel’s recommendation without explanation. St. Francis filed a motion to dismiss as moot count I, which the appellate court had remanded for further proceedings. Because St. Francis had conducted a hearing on the 1995 exclusive contract in compliance with article IX of the bylaws, the trial court dismissed as moot what the parties termed “the injunction case.” Although the trial judge commented on several questions concerning the nature of the hearing, which was at issue in counts IV and V of the amended complaint, he did not expressly rule on those counts. The plaintiff then appealed.

At this point, the plaintiff had two appeals pending in the appellate court: his appeal from the order entering summary judgment on counts II and III of the original complaint, and his appeal from the ruling of the circuit court, on remand from the first appeal, dismissing “the injunction case” as moot. The appellate court consolidated the two appeals. 301 Ill. App. 3d 849. The appellate court affirmed the trial court’s dismissal of the portion of the amended complaint seeking injunctive relief. The appellate court found that the article IX hearing that had been provided to the plaintiff made moot his original request for a hearing under article VIII of the bylaws. 301 Ill. App. 3d at 855. With respect to the plaintiff’s claims for damages in counts II and III of the original complaint, the appellate court reversed the law division judge’s grant of summary judgment for the defendants. The appellate court found that the plaintiff was entitled to pursue claims for damages stemming from the hospital’s failure to provide him with notice and a hearing before the hospital and Cardiovascular Medical entered into the original exclusive contract. The appellate court reaffirmed its holding in the first appeal that the hospital bylaws created a contractual relationship and that the plaintiff’s staff privileges had been effectively revoked by the hospital’s action in entering into the exclusive contract with Cardiovascular Medical. The appellate court also rejected the defendants’ various contentions that they could not be liable for damages for the failure to provide the plaintiff with notice and a hearing. The appellate court therefore remanded counts II and III of the plaintiff’s original complaint to the circuit court for further proceedings. The appellate court did not consider the merits of the remaining counts of the plaintiff’s amended complaint, counts IV and V, believing that the circuit court had failed to rule on those counts. The appellate court remanded the cause to the trial court with directions to address those counts. 301 Ill. App. 3d at 856. We allowed the defendants’ separate petitions for leave to appeal. 177 Ill. 2d R. 315(a). We later granted leave to the Illinois State Medical Society and the Illinois Hospital & HealthSystems Association to submit briefs as 
amici curiae 
in behalf of the parties. 155 Ill. 2d R. 345.

We need not consider in this case whether the hospital’s bylaws are a contract, for we find a threshold issue to be dispositive of this appeal. In the first appeal, the appellate court held that the plaintiff’s right to notice and a hearing under articles VII and VIII of the bylaws was triggered by the hospital’s decision to enter into an exclusive contract with Cardiovascular Medical. 
Garibaldi
, 273 Ill. App. 3d at 540. The defendants challenge that conclusion here, arguing that the bylaws, as they then existed, did not provide the plaintiff with any remedy in these circumstances. The plaintiff responds that the appellate court’s first determination is the law of the case and that our consideration of the issue is therefore barred. We do not agree.

Contrary to the plaintiff’s contention, the law of the case doctrine does not preclude us from reviewing this question, which was resolved by the appellate court in the first appeal but which has not previously been considered on its merits by this court in the course of this litigation. See 
Sjostrom v. Sproule
, 33 Ill. 2d 40, 41 (1965); 
Zerulla v. Supreme Lodge Order of Mutual Protection
, 223 Ill. 518, 520 (1906). This court explained the operation of the law of the case doctrine in 
Relph v. Board of Education of DePue Unit School District No. 103
, 84 Ill. 2d 436, 442 (1981):

“Even if the appellate court were bound by the law of the case it had announced in the first appeals, that limitation would not apply to this court. Although this court denied petitions for leave to appeal in both of the previous appeals of these cases, such action has no precedential effect and in no way amounts to a consideration of the merits of the cases. Nor does it indicate approval of the appellate court’s action. (
People v. Vance 
(1979), 76 Ill. 2d 171, 183.) Therefore, this is the first time these cases have been before us on the merits. Our review may cover all matters properly raised and passed on in the course of litigation. (
Weiland Tool & Manufacturing Co. v. Whitney 
(1969), 44 Ill. 2d 105, 113-14.) In 
Vendo Co. v. Stoner 
(1974), 58 Ill. 2d 289, 306, this court held that the law of the case is not applicable to this court in reviewing the judgment of the appellate court.”

The present appeal marks this court’s first opportunity to consider, on the merits, whether the hospital’s decision to enter into an exclusive contract with Cardiovascular Medical triggered the plaintiff’s right to notice and a hearing under articles VII and VIII of the hospital bylaws. For the reasons explained in 
Relph, 
we do not believe that the doctrine of law of the case precludes us from addressing this issue, even though it was resolved by the appellate court in the plaintiff’s first appeal. We now turn to that question.

The plaintiff contends that the hospital’s exclusive contract with Cardiovascular Medical effectively revoked his privileges to perform open heart surgery at St. Francis and that the hospital’s actions are subject to judicial review to determine whether he was afforded the necessary notice and hearing procedures in compliance with the hospital’s bylaws. The plaintiff contends further that he may recover damages for the hospital’s failure to provide him with notice and a hearing.

In this case, we do not believe that the plaintiff suffered a revocation, suspension, or reduction of his clinical privileges within the meaning of the hospital bylaws. By the terms of the bylaws, clinical privileges are defined as “the permission to provide medical or other patient care services in the Hospital within well-defined limits, based on the individual’s professional license, experience, competence, ability and judgment.” The granting of privileges, therefore, signifies that a doctor is qualified to practice at the hospital. There is no doubt, in this case, that St. Francis has determined that the plaintiff is qualified, and that determination is embodied in the privileges the plaintiff has been granted. The right to exercise those privileges, however, is a separate matter that may be affected by a host of hospital administrative decisions that are wholly unrelated to the doctor’s professional competence or ethics. For example, a hospital may decide, for economic reasons, that it will no longer offer a particular medical specialty. Although the practical effect of that decision may be to curtail or even eliminate a practitioner’s ability to exercise his or her privileges at the particular facility, the hospital’s decision does not also signify that it has reduced or terminated the practitioner’s privileges under its bylaws. Indeed, the hospital’s decision would have nothing to do with the practitioner’s competence to practice, which forms the central inquiry when privileges are reduced or terminated. See 
Engelstad v. Virginia Municipal Hospital
, 718 F.2d 262, 267 (8th Cir. 1983).

In this case, the plaintiff fails to distinguish between his privileges and his ability to exercise those privileges in a “closed” environment. This distinction was illustrated by the court of appeals in 
Collins v. Associated Pathologists, Ltd.
, 844 F.2d 473, 481 (7th Cir. 1988), which stated:

“Dr. Collins also asserts that St. John’s [Hospital] wrongfully removed or reduced his staff privileges in violation of the by-laws of the hospital. However, the record reflects that St. John’s has neither removed nor reduced Dr. Collins’ staff privileges. *** Staff privileges reflect the hospital’s decision that a physician is qualified to practice in the facility, but do not in and of themselves confer employment. Employment as a pathologist at St. John’s was determined by the legal contract between St. John’s and APL [the exclusive contractor]. [Citation.]  Although without concurrent employment by St. John’s as a pathologist these staff privileges may be of little or no value to Dr. Collins, the fact remains that the privileges were neither removed nor reduced.”

Articles VII and VIII of the St. Francis bylaws do not pertain to or control administrative decisions, such as the formation of exclusive contracts, but concern instead matters of professional competence and ethical conduct. More specifically, the remedies afforded by articles VII and VIII are available to a doctor who is facing “corrective action.” Article VII, section 3(c), entitles a practitioner to notice and to the hearing and appeal procedures of article VIII when an action limits, reduces, suspends, or revokes membership or clinical privileges of that practitioner on the medical staff. Article VII, by its terms, applies only to “corrective actions.” Moreover, article VIII specifically states that “[a]ny practitioner against whom an adverse recommendation has been made and which involves corrective action set out in Article VII, Section 3(c) shall have the right to request a hearing on the adverse recommendation under the terms and procedures described in this Article.” Thus, in order for a practitioner to request a hearing under article VIII, both an adverse recommendation and corrective action must be present. In this case, however, the record fails to disclose any “corrective action” initiated by St. Francis against the plaintiff. The hospital’s decision to enter into an exclusive contract cannot be deemed corrective action; rather, that decision affected not only the plaintiff, but also any other physician who had privileges at St. Francis and who was not a member of Cardiovascular Medical or working under subcontract with Dr. Applebaum. For these reasons, we do not believe that the plaintiff was entitled to the notice and hearing procedures provided by articles VII and VIII of the hospital bylaws.

Further support for this conclusion may be found in the subsequent addition of the notice and hearing requirements of article IX of the bylaws for actions like the one involved here. As we have found, prior to the legislature’s amendment of section 10.4 of the Hospital Licensing Act (210 ILCS 85/10.4 (West 1994)) and the hospital’s ensuing adoption of article IX, the hospital bylaws did not explicitly grant the plaintiff the right to notice and a hearing in these circumstances. It was only after the legislature amended section 10.4 of the Hospital Licensing Act and the hospital amended its bylaws that notice and a hearing became expressly necessary whenever the hospital entered into an exclusive contract. An amendment to a statute gives rise to a presumption that the amendment was intended to change the law. 
Illinois v. Mikusch
, 138 Ill. 2d 242, 252 (1990). The legislature’s enactment of this particular requirement suggests to us that the legislation effected a change in the law. Because the hospital found it necessary to amend its bylaws in response to the new legislation, one may also infer that the hospital bylaws, prior to that time, did not already contain a similar requirement.

Finally, we note that our result in this case is consistent with the results reached by a number of other courts that have addressed similar issues involving a medical staff member’s procedural rights prior to a hospital’s entry into an exclusive contract with a competitor. See 
Engelstad v. Virginia Municipal Hospital
, 718 F.2d 262 (8th Cir. 1983); 
Dutta v. St. Francis Regional Medical Center, Inc.
, 254 Kan. 690, 867 P.2d 1057 (1994); 
Bartley v. Eastern Maine Medical Center
, 617 A.2d 1020 (Me. 1992); 
Holt v. Good Samaritan Hospital & Health Center
, 69 Ohio App. 3d 439, 590 N.E.2d 1318 (1990).

As a rule, courts exercise only a limited form of review in cases involving medical staffing decisions. 
Barrows v. Northwestern Memorial Hospital
, 123 Ill. 2d 49 (1988); 
Knapp v. Palos Community Hospital
, 176 Ill. App. 3d 1012 (1988). In 
Adkins v. Sarah Bush Lincoln Health Center
, 129 Ill. 2d 497, 506-07 (1989), this court explained:

“[T]here is, in cases involving private hospital staff privileges, a ‘rule of non-review’ under which, as a matter of public policy, internal staffing decisions of private hospitals are not subject *** to judicial review. [Citations.] An exception exists when the decision involves a revocation, suspension or reduction of existing staff privileges. In such cases, the hospital’s action is subject to a limited judicial review to determine whether the decision made was in compliance with the hospital’s bylaws. [Citations.] The judicial reluctance to review these internal staff decisions reflects the unwillingness of courts to substitute their judgment for the professional judgment of hospital officials with superior qualifications to consider and decide such issues. [Citations.]”

Because we conclude that the plaintiff, in this case, has not suffered a revocation, suspension, or reduction of his privileges, we decline to review the internal staffing decision of St. Francis. See 
Adkins
, 129 Ill. 2d at 506-07. Applying the rule of limited judicial review, we conclude the St. Francis substantially followed its medical staff bylaws in existence when the hospital first entered into the exclusive contract. In sum, because plaintiff’s privileges were not revoked, reduced, or suspended by St. Francis entering into the contract, under the rule of nonreview, we decline to consider further St. Francis’ decision to enter into that exclusive contract. We make no determination regarding counts IV and V of the plaintiff’s amended complaint challenging the fairness of the article IX hearing and the hospital’s refusal to follow the hearing panel recommendation that plaintiff should be exempted from the effects of the exclusive contract.

For the reasons stated, the judgment of the appellate court, affirming the trial court’s dismissal of count I, is affirmed. The judgment of the appellate court, reversing the grant of summary judgment on counts II and III, is reversed. The cause is remanded to the circuit court of Cook County for further proceedings to address counts IV and V of the plaintiff’s amended complaint.

Appellate court judgment

affirmed in part and reversed in part;

cause remanded.

JUSTICE RATHJE took no part in the consideration or decision of this case.

JUSTICE HEIPLE, specially concurring:

I agree with the court’s disposition of this case. However, I further believe that its underlying analysis may need clarification.

Plaintiff argued to this court, 
inter alia
, that St. Francis Hospital’s exclusive contract with his former partners effectively revoked his privileges to practice at that hospital, giving rise to a right of notice and hearing on that revocation under St. Francis’ bylaws. The majority rejects this assertion, likening the exclusive contract to a hospital’s decision to discontinue an entire field of medical practice. Slip op. at 8-10.

My concern is that this analysis, as written, might be read to give 
carte blanche
 authority to a hospital to avoid obligations assumed under its bylaws to provide notice and a hearing before revoking a physician’s privileges, simply by entering into exclusive contracts. It is conceivable that, under a different set of facts, a plaintiff doctor might show that an exclusive contract was entered into by the hospital simply to revoke a physician’s privileges, as an end run around the notice and hearing obligations of its bylaws in order to get rid of him.

Except for this caveat, I fully join the majority’s opinion. Because the facts in this particular case do not support an impropriety on the hospital’s part, I agree that plaintiff was not entitled to the notice and hearing procedures provided by the hospital bylaws.