PLUMMER v. COMMUNITY GEN. HOSP. OF THOMASVILLE, INC.

[155 N.C. App. 574 (2002)]

CHARLES W. PLUMMER, M.D., Plaintiff v. COMMUNITY GENERAL HOSPITAL OF THOMASVILLE, INC., ALLEGIANT PHYSICIAN SERVICES, INC., and PREMIERE ANESTHESIA, INC., Defendants

No. COA97-191

(Filed 31 December 2002)

**Hospitals and Other Medical Facilities— privileges—distinct from service contract**

The termination of an anesthesiologist's contract with defendant hospital, and defendant's entry into an exclusive contract with another provider, was not the legal equivalent of the revocation of staff privileges, so that plaintiff's contract was not breached by the lack of the notice and hearing required for terminating privileges. The trial court did not err by dismissing the action for failure to state a claim.

Appeal by plaintiff from order entered 21 October 1996 by Judge H.W. Zimmerman, Jr., in Davidson County Superior Court. Heard in the Court of Appeals 12 November 2002.

*Ronald Barbee for plaintiff-appellant.*

*Horton and Gsteiger, P.L.L.C., by Elizabeth Horton, for defendant-appellee Community General Hospital of Thomasville, Inc.*

EAGLES, Chief Judge.

Charles W. Plummer, M.D. ("Dr. Plummer") appeals from order granting Community General Hospital of Thomasville, Inc.'s ("Hospital") motion to dismiss for failure to state a claim and expiration of the statute of limitations. After careful consideration of the briefs and record, we affirm.

The Hospital granted Dr. Plummer medical staff privileges in anesthesiology in 1983. The Hospital "reappointed [Dr. Plummer] to the medical staff" in 1984, 1986, 1988, 1990, and 1992 "with full medical staff privileges in anesthesiology." In December 1990, the "Hospital entered into a three year contract with Triad Anesthesia Associates, P.A. [("Triad")], to provide anesthesiology services to the patients at [the Hospital]." The contract could be terminated by either party upon ninety days notice. Dr. Plummer had formed Triad and was its sole shareholder. Triad employed Dr. Plummer as an anesthesiologist.

On or about 23 March 1993, the Hospital gave Triad notice that the contract would be terminated effective 23 June 1993. Dr. Plummer stated in his pleadings that "[w]hile the contract with [Triad] was terminated by Defendant Hospital, [Dr. Plummer] still continued to have full medical staff privileges at the said Hospital with full privileges in anesthesiology."

The Hospital then contracted with Premiere Anesthesia, Inc. ("Premiere") (subsequently d/b/a Allegiant Physician Services, Inc. ("Allegiant")) for Premiere exclusively to provide anesthesiology services to the Hospital. Premiere hired one of Triad's former anesthesiologists but did not offer employment to Dr. Plummer.

On 16 July 1993, Dr. Plummer requested a hearing before the Hospital's Executive Committee of the medical staff which was denied. Dr. Plummer requested a hearing from the Hospital's Board of Directors on 17 August 1993 which was also denied.

On 20 June 1996, Dr. Plummer commenced this action against the Hospital, Allegiant and Premiere. Dr. Plummer alleged breach of contract, misrepresentation, and negligence against the Hospital and intentional interference of contract against Allegiant and Premiere.

On 8 August 1996, the Hospital moved to dismiss pursuant to Rule 12(b)(6) alleging Dr. Plummer's failure to state a claim and expiration of the statute of limitations. On 27 September 1996, Allegiant and Premiere filed a Rule 12(b)(6) motion to dismiss for failure to state a claim. The motions were heard before Judge H.W. Zimmerman, Jr. at the 21 October 1996 Civil Session of Davidson County Superior Court.

The trial court granted the Hospital's Rule 12(b)(6) motion to dismiss for failure to state a claim and expiration of the statute of limitations. By separate order filed 21 October 1996, the trial court granted Allegiant and Premiere's Rule 12(b)(6) motion to dismiss. Plaintiff appealed from both orders on 28 October 1996.

On or about 29 October 1996, Allegiant filed a petition in bankruptcy under Chapter 11 of the United States Bankruptcy Code in the Northern District of Georgia. The bankruptcy court issued an automatic stay of all proceedings against Allegiant. Subsequently, this Court entered a stay of the appeal based on the pending Chapter 11 proceeding. Based on documents before this Court, it appeared that the bankruptcy proceedings concluded and by order dated 21 February 2002, this Court lifted its stay.

On appeal, Dr. Plummer contends that the trial court erred in granting the Hospital's Rule 12(b)(6) motion to dismiss for failure to state a claim and expiration of the statute of limitations. The Hospital cross-assigned error to the trial court's refusal to admit in evidence the Hospital's Bylaws at the hearing on the Rule 12(b)(6) motion. After careful consideration, we affirm.

First, Dr. Plummer argues that the trial court erred in allowing defendant's Rule 12(b)(6) motion to dismiss for failure to state a claim. Plaintiff argues that the Hospital's Bylaws became a part of his contract with the Hospital pursuant to *Virmani v. Presbyterian Health Services Corp.*, 127 N.C. App. 71, 488 S.E.2d 284, *disc. review denied*, 347 N.C. 141, 492 S.E.2d 38 (1997). Dr. Plummer argues that the Hospital's exclusive contract with Premiere to provide anesthesiology services "adversely affected [his] right as an active medical staff member . . . to have clinical privileges at the Hospital in the field of anesthesiology." Dr. Plummer argues that because it effectively terminated his medical staff privileges, he was entitled to notice and a hearing as provided by the Hospital's Bylaws. We disagree.

To determine whether a complaint is sufficient to survive a Rule 12(b)(6) motion to dismiss, the court must ascertain " 'whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.' " *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 217, 225, 517 S.E.2d 406, 413 (1999) (citations omitted). Pursuant to Rule 12(b)(6), a complaint should be dismissed " 'if no law exists to support the claim made, if sufficient facts to make out a good claim are absent, or if facts are disclosed which will necessarily defeat the claim.' " *Id.* (citations omitted).

Although we have not located any North Carolina decision addressing this issue, there are several relevant cases from other jurisdictions. In *Garibaldi v. Applebaum*, 742 N.E.2d 279, 280 (Ill. 2000), the Illinois Supreme Court addressed "what procedural rights, if any, a physician has under hospital bylaws when a hospital enters into an exclusive contract with a competing group of physicians for the performance of the same work as the physician performs." There, at the time of the hospital's entry into the exclusive contract, the bylaws stated in pertinent part that:

> Actions which limit, reduce, suspend or revoke membership or clinical privileges of a practitioner on the staff of the Hospital or revoke staff membership shall be deemed to be adverse to the

practitioner and shall entitle the practitioner to notice and the hearing and appeal procedures as provided in Article VIII. These actions include:

* * *

(2) Reduction, suspension or revocation of clinical privileges and/or admitting privileges;

* * *

(4) Suspension or revocation of specific clinical privileges or Staff membership;

(5) Other similar actions.

Such actions constitute a recommendation by the Executive Committee to the Governing Body.

*Id.* at 281. The court stated that "[a]lthough the practical effect of that decision may be to curtail or even eliminate a practitioner's ability to exercise his or her privileges at the particular facility, the hospital's decision does not also signify that it has reduced or terminated the practitioner's privileges under its bylaws." *Id.* at 285. The court noted that the plaintiff failed "to distinguish between his privileges and his ability to exercise those privileges in a 'closed' environment." *Id.*

In *Holt v. Good Samaritan Hospital & Health Center*, 590 N.E.2d 1318, 1319 (Ohio Ct. App. 1990), the plaintiff alleged that his medical staff privileges were revoked without the benefit of a hearing when the hospital did not renew his company's contract to provide emergency room services and entered into an exclusive contract with another health care provider to provide those services. The Ohio Court of Appeals in *Holt* held that the physician was not entitled to a hearing. *Id.* The court noted that "[w]hile Holt has a constitutionally protected right to practice medicine, he does *not* have a right to practice in any *particular hospital.*" *Id.* at 1321 (emphasis in original). Moreover, the court stated that:

> We agree with [the hospital] and [the exclusive provider] that if [plaintiff's] arguments were to prevail, it would be the death knell of exclusive contracts for medical services. Once having entered into a contract with a provider corporation, a hospital would be locked into continuing the association until the unlikely event that every member physician either ceased practicing medicine or lost his privileges due to incompetency. We will not sub-

stitute our judgment for that of hospital boards throughout the nation, by removing a managerial option that has been universally acknowledged as valid and beneficial to the efficient administration of health care.

*Id.* The court went on to note that the physician's privileges were neither reduced nor revoked and that he retained his same privileges as before the entry of the new exclusive contract. *Id.* at 1323. *But see Lewisburg Community Hosp., Inc. v. Alfredson*, 805 S.W.2d 756, 761 (Tenn. 1991) (holding that the hospital's refusal to allow a radiologist access to its radiology equipment and staff after the termination of the radiologist's exclusive contract "significantly reduced his privileges" and "that the Hospital breached its contract by failing to provide him a hearing" according to the medical staff bylaws).

Several other states have addressed this issue and have concluded either that entry of an exclusive contract with a competing group did not necessarily serve as termination of medical staff privileges or that entry of an exclusive contract with a competing group did not entitle the current physician(s) to notice and a hearing concerning their medical staff privileges. *See Van Valkenburg v. Paracelsus Healthcare Corp.*, 606 N.W.2d 908, 918 (N.D. 2000) (stating that "we agree with the majority of courts, and we hold the hearing and due process provisions of the Hospital's medical staff bylaws are not implicated unless there are allegations bearing on professional competency, conduct, or character"); *Dutta v. St. Francis Reg'l Med. Ctr., Inc.*, 867 P.2d 1057, 1060 (Kan. 1994) (holding that plaintiff-radiologist was not entitled to a hearing under hospital bylaws when the hospital entered into an exclusive contract with another radiologist as plaintiff-radiologist's "staff membership remained intact and that the decision to revoke her access to the radiology facilities was purely a business decision"); *Bartley v. Eastern Maine Med. Ctr.*, 617 A.2d 1020, 1022-23 (Me. 1992) ("The granting of privileges signifies that a doctor is qualified to practice at the hospital. . . . The right to exercise the privileges, however, is a separate matter.").

Here, Dr. Plummer alleged in his complaint that according to "the medical staff Bylaws . . . 'Medical Staff privileges may only be terminated according to Articles VIII and IX of the medical staff Bylaws.' " Dr. Plummer further alleged that:

Because Defendant Hospital entered into a contract with Premiere Anesthesia, Inc., to exclusively provide anesthesiology

services to patients at the said Hospital, Plaintiff has been effectively denied by Defendant Hospital medical staff privileges at the Hospital in anesthesiology, notwithstanding the fact that such medical staff privileges had not been terminated in accordance with the bylaws of Defendant Hospital.

Dr. Plummer's three claims all contain allegations that the Hospital breached its contract with Dr. Plummer by entering into an exclusive agreement with Premiere or that the exclusive agreement with Premiere effectively terminated Dr. Plummer's privileges at the Hospital.

We hold that the termination of the Triad contract and entry of an exclusive contract with Premiere was not the legal equivalent of the termination of Dr. Plummer's medical staff privileges. The complaint shows that Dr. Plummer maintained his privileges at the Hospital even though the Hospital entered into an exclusive contract with Premiere. "The right to exercise medical privileges is separate from the granting or revoking of those privileges, and a physician with privileges is not guaranteed employment or the free and unfettered right to use a facility to exercise those privileges." *Van Valkenburg*, 606 N.W.2d at 918. Dr. Plummer was not entitled to notice and a hearing before the Hospital entered into an exclusive contract with Premiere because his privileges were not terminated. Dr. Plummer "fails to appreciate the difference between his privileges and his ability to provide services in a 'closed' [hospital]." *Holt*, 590 N.E.2d at 1323. The trial court properly dismissed Dr. Plummer's action for failure to state a claim.

Because we have concluded that the trial court properly dismissed this action for failure to state a claim, we need not address Dr. Plummer's remaining issue or the Hospital's cross-assignment of error.

Affirmed.

Judges GREENE and MARTIN concur.