SECOND DIVISION
FILED: February 20, 2007

No. 1-06-1005

| | | |
|---|---|---|
| ROBERT S. GOLDBERG, M.D., | ) | APPEAL FROM THE CIRCUIT |
| | ) | COURT OF COOK COUNTY, ILLINOIS |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RUSH UNIVERSITY MEDICAL | ) | |
| CENTER, f/k/a RUSH PRESBYTERIAN- | ) | |
| ST. LUKE'S MEDICAL CENTER, an | ) | No. 04 L 12403 |
| Illinois not-for-profit corporation; | ) | |
| MIDWEST ORTHOPEDICS AT RUSH, | ) | |
| L.L.C., an Illinois limited liability company, | ) | |
| as successor to Midwest Orthopaedics, a | ) | |
| dissolved or in-dissolution Illinois general | ) | |
| partnership; GUNNAR B. ANDERSSON, | ) | |
| M.D., MARK S. COHEN, M.D., and DOES | ) | |
| I-XXV, | ) | HONORABLE |
| | ) | ALLEN S. GOLDBERG, |
| Defendants-Appellees. | ) | JUDGE PRESIDING. |

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Robert S. Goldberg, M.D., appeals the dismissal of his action against the

defendants, Rush University Medical Center (Rush), Midwest Orthopedics At Rush, L.L.C.,

(Midwest), Gunnar B. Andersson, M.D., Mark S. Cohen, M.D., and other unknown former partners

in Midwest, pursuant to section 2-619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-619

(West 2004)). For the reasons that follow, we affirm.

Goldberg brought this action seeking damages from the defendants based on his claims for

tortious interference with contractual relations, tortious interference with prospective economic

advantage, and breach of contract. He also sought injunctive relief. The allegations contained in the

second amended complaint and attached exhibits reveal the following factual scenario. Since 1995, Goldberg, an orthopedic surgeon, has been a member of the medical staff at Rush, a private, not-for-profit hospital. He also practices at other private hospitals and medical clinics in the Chicago area. At Rush, Goldberg works with Andersson, the Chairman of the Department of Orthopedic Surgery, and with Cohen, another orthopedic surgeon on Rush's medical staff. Andersson and Cohen are both partners in Midwest, a limited-liability company that operates an orthopedic surgery practice at Rush and other private hospitals and clinics.

As a member of the medical staff, Goldberg's affiliation with Rush is governed by the Bylaws of the Medical Staff of Rush (bylaws). The bylaws set forth a grievance procedure under which medical staff members may challenge certain conduct that affects the member's medical practice and is inconsistent with the clinical and academic mission of the member's department, the medical staff, or the medical center. The conduct that may be the subject of a grievance includes (1) unreasonable denial of, or restriction of access to, the available resources of the member's department, (2) unreasonable actions or practices by the department, the medical staff, or the medical center, and (3) the executive committee's failure to act in a situation where the bylaws or the rules and regulations of the medical staff have not been followed. Each grievance must be filed in writing within 30 days of the event on which the grievance is based, and if informal resolution of the grievance cannot be accomplished, the physician may request a hearing before an ad hoc committee.

Beginning in December 1995, Goldberg repeatedly voiced complaints to Andersson, Cohen and other personnel at Rush about his assignments and treatment as a member of the medical staff. In particular, Goldberg complained that he had not been assigned an equitable share of the emergency

room hand-trauma call, he did not have access to orthopedic surgery residents in his surgeries or office clinics, he had not been given the opportunity to perform teaching duties in the Department of Orthopedic Surgery, and he had not been allowed to participate in developing proposed revisions to the Department of Orthopedic Surgery Rules of Governance.

In 2003, Goldberg initiated a formal grievance under Rush's bylaws, raising numerous issues, including those set forth above. A five-member grievance committee was appointed, with two of those members selected by Goldberg. Several of Goldberg's complaints were dismissed by the committee because they were not alleged to have affected his practice or because they had not been grieved within 30 days as required by the bylaws. Goldberg ultimately withdrew his grievance on the remaining issues after expressing dissatisfaction with the delay in the proceedings and with the committee's prehearing rulings regarding document production and the grievable issues.

Shortly after withdrawing his grievance, Goldberg filed this action, seeking damages for tortious interference with contractual relations, tortious interference with prospective economic advantage, and breach of contract. Specifically, Goldberg alleged that, as a result of the defendants' conduct, he was denied (1) an equitable share of the Rush emergency room hand trauma call, (2) access to orthopedic surgery residents in Rush operating rooms, (3) appropriate teaching duties in the Rush Department of Orthopedic Surgery, and (4) participation in developing proposed revisions to the Rush Department of Orthopedic Surgery Rules of Governance. Goldberg also claimed that emergency room cases involving hand traumas were improperly diverted to Cohen on Goldberg's assigned hand-trauma call days, that Goldberg's advancement from Adjunct Attending Physician to Assistant Attending Physician had been delayed by more than six years, that surgeons who were

members of Midwest received improper subsidies of equipment and other resources from Rush, and that the renewal of Goldberg's lease on his office space was improperly delayed. Goldberg also sought injunctive relief in the event that his damages claims were dismissed.

The defendants moved to dismiss the action, asserting, inter alia, that the conduct underlying Goldberg's claims was not subject to judicial review and that Goldberg had failed to exhaust his administrative remedy within the medical institution because he withdrew his grievance before the matter was heard by the grievance committee. Initially, the circuit court rejected the defendants' argument that the conduct underlying Goldberg's claims was not subject to judicial review, but dismissed the second amended complaint because Goldberg had failed to exhaust the remedies available to him under the grievance procedure specified in the bylaws. On Goldberg's motion for reconsideration, the court reversed its ruling on both grounds. In its final order, the circuit court determined that Goldberg was not required to exhaust his remedies under the grievance procedure, but his action must be dismissed because the conduct underlying his claims was not subject to judicial review.[1] This appeal followed.

In reviewing the circuit court's dismissal under section 2-619 of the Code, this court accepts as true all well-pled facts in the plaintiff's complaint and draws from those facts all reasonable

---

[1] The defendants styled their motions as brought pursuant to section 2-615 of the Code. We observe that the defendants' motions were actually hybrid motions, asserting certain grounds for dismissal which were proper under section 2-615 and other grounds which were proper under section 2-619. In ruling that Goldberg's action must be dismissed because the conduct underlying his claims was not subject to judicial review, the circuit court treated the motions as filed under section 2-619. On appeal, Goldberg has not alleged any prejudice based on the mislabeling of the defendants' motions or the circuit court's decision to dismiss under section 2-619. See Advocate Health & Hospitals Corp. v. Bank One, N.A., 348 Ill. App. 3d 755, 758, 810 N.E.2d 500 (2004).

inferences which are favorable to the plaintiff. Borowiec v. Gateway 2000, Inc., 209 Ill. 2d 376, 413, 808 N.E.2d 957 (2004); Zych v. Tucker, 363 Ill. App. 3d 831, 833, 844 N.E.2d 1004 (2006). We do not, however, accept as true conclusions of law or fact that are unsupported by allegations of specific fact. Merritt v. Randall Painting Co., 314 Ill. App. 3d 556, 559, 732 N.E.2d 116 (2000).

An action will be dismissed under section 2-619 of the Code if, after construing the pleadings and supporting documents in the light most favorable to the nonmoving party, the trial court finds that no set of facts can be proved upon which relief could be granted. Webb v. Damisch, 362 Ill. App. 3d 1032, 1037, 842 N.E.2d 140 (2005). A section 2-619 motion to dismiss admits the legal sufficiency of the complaint and raises defects, defenses, or other affirmative matters that defeat the claim. Cohen v. McDonald's Corp., 347 Ill. App. 3d 627, 632, 808 N.E.2d 1 (2004). In reviewing an appeal from a dismissal under section 2-619, the relevant question is whether there exists a genuine issue of material fact precluding dismissal, or absent an issue of material fact, whether dismissal is proper as a matter of law. Lykowski v. Bergman, 299 Ill. App. 3d 157, 164, 700 N.E.2d 1064 (1998). Review of such a dismissal is de novo. Martin v. Illinois Farmers Insurance, 318 Ill. App. 3d 751, 757, 742 N.E.2d 848 (2000).

On appeal, Goldberg argues that the circuit court erred in dismissing his action based on the determination that the conduct underlying his claims was not subject to judicial review. Goldberg's argument is premised on his assertion that the "rule of nonreview," which formed the basis for the court's ruling, is inapplicable in this case.

Illinois has long adhered to the judicially created doctrine of "nonreview." See Garibaldi v. Applebaum, 194 Ill. 2d 438, 451-52, 742 N.E.2d 279 (2000); Adkins v. Sarah Bush Lincoln Health

No. 1-06-1005

Center, 129 Ill. 2d 497, 506-07, 544 N.E.2d 733 (1989); Barrows v. Northwestern Memorial Hospital, 123 Ill. 2d 49, 52, 525 N.E.2d 50 (1988). Under this doctrine, as a matter of public policy, internal staffing decisions of private hospitals are not subject to judicial review. Garibaldi, 194 Ill. 2d at 451; Adkins, 129 Ill. 2d at 506; Barrows, 123 Ill. 2d at 51-52. The judicial reluctance to review these internal staff decisions reflects the unwillingness of courts to substitute their judgment for that of hospital officials with superior qualifications to consider and decide such issues. Garibaldi, 194 Ill. 2d at 452; quoting Adkins, 129 Ill. 2d at 507.

An exception to this rule has developed where a physician's existing staff privileges are revoked, suspended, or reduced. Garibaldi, 194 Ill. 2d at 451-52; Adkins, 129 Ill. 2d at 506-07; Lo v. Provena Covenant Medical Center, 356 Ill. App. 3d 538, 542, 826 N.E.2d 592 (2005); Knapp v. Palos Community Hospital, 176 Ill. App. 3d 1012, 1018, 531 N.E.2d 989 (1988); Jain v. Northwest Community Hospital, 67 Ill. App. 3d 420, 425, 385 N.E.2d 108 (1978). In such circumstances, the court will engage in limited review to determine whether the hospital complied with its bylaws in rendering the decision. Garibaldi, 194 Ill. 2d at 451-52; Adkins, 129 Ill. 2d at 506-07; Lo, 356 Ill. App. 3d at 542; Knapp, 176 Ill. App. 3d at 1018; Jain, 67 Ill. App. 3d at 425. Where a hospital's decision does not result in a revocation, suspension, or reduction of existing privileges, Illinois courts will not consider the merits of a private hospital's staffing decision. Garibaldi, 194 Ill. 2d at 452.

Goldberg does not argue that the defendants' conduct resulted in a revocation, suspension, or reduction of his staff privileges; he concedes that his privileges have not been adversely affected. Instead, Goldberg asserts that the circuit court erred in applying the doctrine of "nonreview" to

6

dismiss his action because the rule is inapplicable in this context. According to Goldberg, the doctrine applies solely to staffing decisions involving hospital appointments and privileging. We disagree.

Contrary to Goldberg's assertion, the doctrine of "nonreview" is not exclusively restricted to cases involving a question of whether a particular doctor's privileges should be granted, denied, or disciplined. In Garibaldi v. Applebaum, 194 Ill. 2d 438, 451-52, 742 N.E.2d 279 (2000), the hospital entered into an exclusive contract for the performance of open-heart surgery with a physicians' group, of which the plaintiff was not a member. Garibaldi, 194 Ill. 2d at 441. The plaintiff argued that the exclusive contract effectively revoked his right to perform open-heart surgery. Garibaldi, 194 Ill. 2d at 448. The court rejected this argument and distinguished the plaintiff's privileges from his ability to exercise those privileges. Garibaldi, 194 Ill. 2d at 449-50. In making this distinction, the court stated that the grant of medical privileges, signifying that a doctor is qualified to practice at the hospital, is separate and distinct from the right to exercise those privileges, which may be affected by a host of hospital administrative decisions that are wholly unrelated to a physician's competence or ethics. Garibaldi, 194 Ill. 2d at 448-49. The court determined that, although the plaintiff's ability to exercise his privileges at the hospital might be curtailed, or even eliminated, by the exclusive contract, the plaintiff had not suffered a revocation, suspension, or reduction of his privileges. Garibaldi, 194 Ill. 2d at 449. Because the plaintiff had not suffered a revocation, reduction, or suspension of his privileges, the supreme court refused to review the hospital's staffing decision to enter into the exclusive contract. Garibaldi, 194 Ill. 2d at 452.

Thus, although Garibaldi did not involve the grant, denial, or discipline of the plaintiff's medical privileges, the supreme court applied the doctrine of "nonreview" to the hospital's

administrative decision to enter into the exclusive contract for open-heart surgeries. Garibaldi, 194 Ill. 2d at 452. Implicit in the court's decision was the recognition that hospital staffing decisions include determinations regarding the assignment of particular tasks and responsibilities. In Garibaldi, the relevant staffing decision centered on the question of which doctors were assigned to perform open-heart surgeries. In this case, Goldberg's claims were also premised on staffing decisions which focused on which doctors were assigned to the emergency room hand-trauma call, to engage in teaching responsibilities, to have residents assist them in their surgeries, and to participate in the revision of departmental regulations. Goldberg asserted that the above assignments were not fairly distributed by the Rush administrators. However, like the plaintiff in Garibaldi, Goldberg has failed to distinguish between his medical privileges and his ability to exercise those privileges.

The doctrine of "nonreview" is grounded on the idea that courts are not well equipped to review the action of hospital authorities in rendering medical staffing decisions because those decisions involve specialized medical and business considerations that are uniquely within the province of the medical community and hospital administrators. See Tabora v. Gottlieb Memorial Hospital, 279 Ill. App. 3d 108, 116, 664 N.E.2d 267 (1996); Knapp, 176 Ill. App. 3d at 1020. This principle recognizes that hospital administrators should be free to make management and personnel decisions that impact on patient care, allocation of resources, and potential liability without judicial intervention. See Barrows, 123 Ill. 2d at 58. The power to manage the affairs of a private hospital necessarily must include the discretion to make routine clinical staffing assignments and allocation of resources and personnel. The doctrine of "nonreview" serves both judicial economy and the medical and commercial interests of private corporations operating a hospital or medical center. Consequently, hospital staffing decisions are entitled to deference from the courts. See Adkins, 129

Ill. 2d at 506-07. We hold that the circuit court acted properly in applying the doctrine to dismiss Goldberg's action.

Finally, we observe that although Goldberg's notice of appeal reflects an intent to appeal the circuit court's denial of leave to file a third amended complaint, his brief does not include any argument or citation to relevant authorities to support this challenge. Accordingly, this argument has been forfeited on appeal. See Official Reports Advance Sheet No. 12 (June 7, 2006), R. 341(h)(7), eff. September 1, 2006 (argument portion of brief shall contain the contentions of the appellant and the reasons therefore, with citation of the authorities and the pages of the record relied on, and points not argued are waived); People v. Lantz, 186 Ill. 2d 243, 261-62, 712 N.E.2d 314 (1999).

Moreover, even if this issue had been preserved for review, we find no reversible error in the circuit court's denial of leave to file a third amended complaint. The circuit court has broad discretion in determining whether to allow an amendment to a complaint, and its ruling on the plaintiff's request will not be disturbed on appeal absent a manifest abuse of that discretion. Loyola Academy v. S & S Roof Maintenance, Inc., 146 Ill. 2d 263, 273-74, 586 N.E.2d 1211 (1992); Keefe-Shea Joint Venture v. City of Evanston, 364 Ill. App. 3d 48, 61, 845 N.E.2d 689 (2005). In order to determine whether the circuit court abused its discretion in denying a motion to file an amended complaint, the court considers four factors: (1) whether the proposed amendment would cure the defective pleading; (2) whether the parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified. Keefe-Shea Joint Venture, 364 Ill. App. 3d at 62.

No. 1-06-1005

Here, Goldberg requested leave to add two new claims for declaratory relief. In the first of these claims, set forth in proposed Count 5, Goldberg sought a declaratory judgment that the defendants were violating or improperly failing to enforce the grievance procedures and other mandates in the bylaws. Leave to file this claim was properly denied because it was premised on the same conduct underlying the four counts in the second amended complaint and was precluded by the doctrine of "nonreview." Therefore, this proposed amendment did not cure the defective pleading. See Keefe-Shea Joint Venture, 364 Ill. App. 3d at 62.

In the second new claim, contained in proposed Count 6, Goldberg requested a declaration that he had not defamed Midwest or Rush in the grievance and circuit court proceedings. Leave to file this claim was properly denied because a declaration of nonliability for past conduct is not a function of the declaratory judgment statute. Howlett v. Scott, 69 Ill. 2d 135, 143, 370 N.E.2d 1036 (1977); Werst v. Three Fires Council of Boy Scouts of America, 346 Ill. App. 3d 706, 714, 805 N.E.2d 709 (2004); AEH Const., Inc. v. State, Dept. of Labor, 318 Ill. App. 3d 1158, 1161, 743 N.E.2d 1102 (2001). In light of these considerations, we hold that the circuit court did not abuse its discretion in denying Goldberg leave to file a third amended complaint.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

WOLFSON, P.J., and HALL, J., concur.