**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 27, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERT L.G. STEARS, M.D.,

Plaintiff-Appellant,

v.

No. 05-8092

SHERIDAN COUNTY MEMORIAL
HOSPITAL BOARD OF TRUSTEES,
a governmental entity,

Defendant-Appellee.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. NO. 04-CV-223-WFD)**

W.W. Reeves of Park Street Law Office, Casper, Wyoming, for Plaintiff-
Appellant.

Scott E. Ortiz (Nicol Thompson Kramer with him on the brief), of Williams,
Porter, Day & Neville, P.C., Casper, Wyoming, for Defendant-Appellee.

Before **LUCERO**, **O'BRIEN**, and **SILER**,[*] Circuit Judges.

**SILER**, Circuit Judge.

---

[*]The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for
the Sixth Circuit, sitting by designation.

Plaintiff Dr. Robert L.G. Stears appeals from the district court's grant of summary judgment in favor of the Board of Trustees of Sheridan County Memorial Hospital (the "Hospital"). He argues that when the Hospital entered into an exclusive contract with another radiologist services provider, he was deprived of his clinical privileges, a right he claims is preserved under Wyoming law, 42 U.S.C. § 1983, and the Hospital's bylaws. We **AFFIRM**.

## I. Facts and Procedural Background

In 1995, Dr. Stears accepted employment with Dr. Lindemann, a radiologist in Sheridan, Wyoming, to practice with Northern Wyoming Diagnostic Radiology. Dr. Stears purchased Dr. Lindemann's practice in 1996 and incorporated Wyoming Radiology, which took over Dr. Lindemann's exclusive contract with the Hospital. From 1996-2000, Dr. Stears practiced at the Hospital pursuant to the terms of the Radiology Service Agreement ("RSA") negotiated by Dr. Lindemann. In 2000, Dr. Stears negotiated another exclusive contract (the "2000 RSA") with the Hospital for a term of seven years. The 2000 RSA established that Dr. Stears's group would be the exclusive provider of radiology services to the Hospital. In return, Dr. Stears agreed he would not provide radiology services at any other facility within a 100-mile radius of Sheridan.

In early 2002, Sheridan Orthopedic Associates began providing radiology services in their office. Competition with this new imaging center caused a substantial loss in income to the Hospital and to Dr. Stears. In February 2002,

Dr. Stears attempted to change the terms of the contract. Specifically, he wanted to rescind his non-compete agreement, but the Hospital refused to renegotiate the contract. In April 2003, Dr. Stears sought to amend the 2000 RSA, and again the Hospital declined to change the contract.

He then hired AGI Healthcare Group ("AGI") to evaluate the potential of an outpatient imaging center. Based on the report provided by AGI Healthcare, Dr. Stears presented a Memorandum of Understanding to the Hospital, proposing a joint venture between the Hospital and Wyoming Radiology to establish an outpatient imaging center. The venture would give each a fifty percent interest and would supersede the 2000 RSA. The Hospital's CEO, Kenneth Huey, declined the proposed venture.

In January 2004, Dr. Stears, through his attorney, sent a letter to the Hospital stating that Wyoming Radiology was terminating the 2000 RSA. The letter claimed, "Despite the numerous communications between our respective organizations concerning MRI services and the increasing threat posed by new local MRI competition, the hospital has discarded attempts to effectively compete for MRI patients. As such, continued performance . . . is impossible." Dr. Stears notified the Hospital that Wyoming Radiology would "continue to serve all the patients of Sheridan County for the foreseeable future."

Although Dr. Stears continued to provide radiology services and assured the Hospital that coverage would continue, the Hospital entered into a new

exclusive provider contract for radiology services with Capital Radiology, PLLC, d/b/a Bighorn Radiology ("Bighorn Radiology") in June 2004. The Hospital then informed Dr. Stears that the radiology department would be closed to radiologists who were not part of the new exclusive provider. Dr. Stears was not afforded a hearing before or after this determination was made.

Dr. Stears was reappointed to the Active Medical Staff of the Hospital effective January 1, 2005. Even so, he has not performed a procedure in the Hospital since Bighorn Radiology became the exclusive provider.

In July 2004, Dr. Stears brought a state court action alleging that the Hospital had violated WYO. STAT. ANN. § 35-2-113, revoked his clinical privileges in breach of the bylaws, and violated his due process rights under 42 U.S.C. § 1983. The case was removed to federal court, and the district court granted summary judgment in favor of the Hospital on all counts.

## II. Discussion

We review summary judgment *de novo*, construing the record in the light most favorable to Dr. Stears and resolving all reasonable inferences in his favor. *Alder v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

### A. Procedural Due Process

Dr. Stears first contends that the district court erred when it determined that the Hospital did not violate his due process rights under 42 U.S.C. § 1983 when it denied him access to the radiology department. To set forth an actionable

procedural due process claim, a plaintiff must demonstrate: (1) the deprivation of a liberty or property interest and (2) that no due process of law was afforded. *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).

It is undisputed that Dr. Stears was not given a due process hearing. Consequently, the only issue is whether Dr. Stears was deprived of a protected property interest. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Property interests are not derived from the Constitution. *Id.* Rather, "Courts must look to 'existing rules or understandings that stem from an independent source such as state law' to define the dimensions of protected property interests." *Setliff v. Mem'l Hosp. of Sheridan County*, 850 F.2d 1384, 1395 (10th Cir. 1988) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985)).

The district court engaged in a lengthy discussion of how to characterize the property interest at issue. Ultimately, it reached the same conclusion regardless of how the property interest was analyzed. It found that if Dr. Stears's asserted property right is his hospital privileges, then although he may be entitled to this interest, he has not been deprived of it. The court emphasized that the grant of privileges did not constitute a contract of employment with the Hospital. After Dr. Stears terminated the 2000 RSA, he could no longer claim a right to

practice as a radiologist in the Hospital. On the other hand, if his property interest was in the *exercise of* his hospital privileges, then the court reasoned that the claim fails because he does not have a legitimate claim of entitlement to this interest in the first place. We agree with the district court's analysis.

The Hospital's bylaws define "clinical privileges" as "the permission granted to a practitioner to render specific diagnostic, therapeutic, medical, dental, or surgical services." Privileges "shall be extended only to professionally competent and ethical practitioners who continuously meet the qualifications, standards, requirements, and responsibilities set forth in [the bylaws]." When a physician's privileges are "reduced, suspended, or revoked," if such action is "deemed adverse," the physician must be afforded notice and a hearing.

Dr. Stears argues that because the privileges he now possesses have no practical value, his privileges have been reduced, thus triggering the notice and hearing requirement. Yet, Dr. Stears acknowledges that, as a member of the active medical staff, he has the rights to vote, to hold office, and to serve on medical staff committees. The Hospital's decision to obtain a new exclusive provider in no way signifies a negative assessment of Dr. Stears's professional competence. Indeed, if he joined Bighorn Radiology, he could treat patients, as his privileges remain intact. The distinction between having medical staff privileges and being able to exercise those privileges is not a "fiction," as Dr. Stears claims, and we join a number of other courts in recognizing this

-6-

distinction. *See, e.g.*, *Englestad v. Virginia Mun. Hosp.*, 718 F.2d 262, 267-69 (8th Cir. 1983); *Garibaldi v. Applebaum*, 194 Ill.2d 438, 448-449 (Ill. 2000); *Dutta v. St. Francis Reg. Med. Ctr., Inc.*, 867 P.2d 1057, 1062-63 (Kan. 1994); *Bartley v. Eastern Maine Med. Ctr.*, 617 A.2d 1020, 1022-23 (Me. 1992); Holt v. Good Samaritan Hosp. and Health Ctr., 590 N.E.2d 1318, 1323 (Ohio Ct. App. 1990).

**B. Breach of Contract**

Dr. Stears next argues that the district court erroneously held that the Hospital did not violate the terms of the bylaws by entering into an exclusive contract with Bighorn Radiology without providing him a hearing. Using the same reasoning discussed above, the court found that Dr. Stears's privileges were not "reduced, revoked, or suspended" within the meaning of the bylaws. Further, the court distinguished between an action taken against the physician that arises incidentally out of a hospital's business decision to use exclusive contracts and corrective action taken directly against a physician. The court concluded that "nothing in the bylaws prevents a reasonable managerial decision by the Hospital Board to enter into an exclusive contract." We also find that the procedural requirements set forth in the bylaws are not implicated in this situation.

As stated above, the Hospital has not suggested that Dr. Stears is in any way incompetent or failed to perform under his contract. Therefore, at a hearing, Dr. Stears would not be defending his professional competence or ethics, but

would be contesting the Hospital's decision to enter into an exclusive contract with another radiology services provider. As the court in *Englestad* found, the procedural requirements of the bylaws "were not intended to cover cases . . . where the use a doctor can make of his staff privileges has been incidentally affected by the hospital's administrative decision to terminate a personal service contract with the hospital. [A doctor's] staff privileges guarantee[] him only the authority, not the wherewithal, to practice his profession." 718 F.2d at 268. Any other finding "would be the death knell of exclusive contracts." *Holt*, 590 N.E.2d at 1321.

## C. WYO. STAT. ANN. § 35-2-113

Finally, Dr. Stears claims that the Hospital violated WYO. STAT. ANN. § 35-2-113 when it entered into an exclusive contract with Bighorn Radiology. This argument is without merit. Wyoming Statute § 35-2-113 states:

> Any hospital owned by the state, or any hospital district, county or city thereof, and any hospital whose support, either in whole or in part, is derived from public funds, shall be open for practice to doctors of medicine, doctors of osteopathy, doctors of chiropractic, doctors of dentistry and podiatrists, who are licensed to practice medicine or surgery, chiropractic, dentistry or podiatry in this state. Provided, however, that these hospitals by appropriate bylaws shall promulgate reasonable and uniform rules and regulations covering staff admissions and staff privileges. Admission shall not be predicated solely upon the type of degree of the applicant and the governing body shall consider the competency and character of each applicant.

We agree with the district court that this statute is simply an anti-discrimination statute. Dr. Stears argues that even if this interpretation is correct, the statute

creates an expectation of enjoyment of staff privileges, subject only to reasonable and uniform regulations. However, as explained above, Dr. Stears's staff privileges have not been revoked. The Hospital's regulations conform to the requirements of WYO. STAT. ANN. § 35-2-113.

## III. Conclusion

For the foregoing reasons, we **AFFIRM**.